# United States Court of Appeals for the Federal Circuit

2008-1448
(Opposition No. 91/157,315)


IN RE BOSE CORPORATION,

Appellant.



Charles Hieken, Fish & Richardson P.C., of Boston, Massachusetts, argued for appellant. With him on the brief was Amy L. Brosius.

Raymond T. Chen, Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Arlington, Virginia, argued for the Director of the United States Patent and Trademark Office. With him on the brief were Thomas V. Shaw and Christina J. Hieber, Associate Solicitors.

Susan J. Hightower, Pirkey Barber LLP, of Austin,Texas, argued for amicus curiae, American Intellectual Property Law Association. With her on the brief was William G. Barber. Of counsel on the brief was James H. Pooley, American Intellectual Property Law Association, of Arlington, Virginia.

Appealed from: United States Patent and Trademark Office
Trademark Trial and Appeal Board

# United States Court of Appeals for the Federal Circuit

2008-1448
(Opposition No. 91/157,315)

IN RE BOSE CORPORATION,

Appellant.

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board.

_____

DECIDED:  August 31, 2009

_____

Before MICHEL, Chief Judge, DYK, and MOORE, Circuit Judges.

MICHEL, Chief Judge.

The Trademark Trial and Appeal Board ("Board") found that Bose Corporation ("Bose") committed fraud on the United States Patent and Trademark Office ("PTO") in renewing Registration No. 1,633,789 for the trademark WAVE.  Bose Corp. v. Hexawave, Inc., 88 USPQ2d 1332, 1338 (T.T.A.B. 2007).  Bose appeals the Board's order cancelling the registration in its entirety.  Because there is no substantial evidence that Bose intended to deceive the PTO in the renewal process, we reverse and remand.

## I.    BACKGROUND

Bose initiated an opposition against the HEXAWAVE trademark application by Hexawave, Inc. ("Hexawave"), alleging, inter alia, likelihood of confusion with Bose's prior registered trademarks, including WAVE.  Bose, 88 USPQ2d at 1333.  Hexawave

counterclaimed for cancellation of Bose's WAVE mark, asserting that Bose committed fraud in its registration renewal application when it claimed use on all goods in the registration while knowing that it had stopped manufacturing and selling certain goods. Id.

The fraud alleged by Hexawave involves Bose's combined Section 8 affidavit of continued use and Section 9 renewal application ("Section 8/9 renewal"),[1] signed by Bose's general counsel, Mark E. Sullivan, and filed on January 8, 2001. Bose, 88 USPQ2d at 1335. In the renewal, Bose stated that the WAVE mark was still in use in commerce on various goods, including audio tape recorders and players. Id. at 1333. The Board found that (1) Bose stopped manufacturing and selling audio tape recorders and players sometime between 1996 and 1997; and (2) Mr. Sullivan knew that Bose discontinued those products when he signed the Section 8/9 renewal. Id. at 1334-35.

At the time Mr. Sullivan signed the Section 8/9 renewal, Bose continued to repair previously sold audio tape recorders and players, some of which were still under warranty. Bose, 88 USPQ2d at 1335. Mr. Sullivan testified that in his belief, the WAVE mark was used in commerce because "in the process of repairs, the product was being transported back to customers." Id. The Board concluded that the repairing and shipping back did not constitute sufficient use to maintain a trademark registration for goods. Id. at 1337. It further found Mr. Sullivan's belief that transporting repaired goods

---

[1] Federal trademark registrations issued on or after November 16, 1989, remain in force for ten years, and may be renewed for ten-year periods. To renew a registration, the owner must file an Application for Renewal under Section 9. In addition, at the end of the sixth year after the date of registration and at the end of each successive ten-year period after the date of registration, the owner must file a Section 8 Declaration of Continued Use, "an affidavit setting forth those goods or services recited in the registration on or in connection with which the mark is in use in commerce. . . ." 15 U.S.C. § 1058(b)(1); see also, id. §§ 1058, 1059.

constituted use was not reasonable. Id. at 1338. Finally, the Board found that the use statement in the Section 8/9 renewal was material. Id. As a result, the Board ruled that Bose committed fraud on the PTO in maintaining the WAVE mark registration and ordered the cancellation of Bose's WAVE mark registration in its entirety. Id. Later, the same panel denied Bose's Request for Reconsideration. Bose Corp. v. Hexawave, Inc., Opposition No. 91157315, 2008 WL 1741913 (T.T.A.B. Apr. 9, 2008).

Bose appealed. Because the original appellee Hexawave did not appear, the PTO moved, and the court granted leave to the Director, to participate as the appellee. We have jurisdiction pursuant to 15 U.S.C. § 1071(a) and 28 U.S.C § 1295(a)(4)(B).

## II.   DISCUSSION

This court reviews the Board's legal conclusions de novo. In re Int'l Flavors & Fragrances Inc., 183 F.3d 1361, 1365 (Fed. Cir. 1999). We review the Board's factual findings for substantial evidence. Recot, Inc. v. Becton, 214 F.3d 1322, 1327 (Fed. Cir. 2000).

A third party may petition to cancel a registered trademark on the ground that the "registration was obtained fraudulently." 15 U.S.C. § 1064(3). "Fraud in procuring a trademark registration or renewal occurs when an applicant knowingly makes false, material representations of fact in connection with his application." Torres v. Cantine Torresella S.r.l., 808 F.2d 46, 48 (Fed. Cir. 1986). A party seeking cancellation of a trademark registration for fraudulent procurement bears a heavy burden of proof. W.D. Byron & Sons, Inc. v. Stein Bros. Mfg. Co., 377 F.2d 1001, 1004 (CCPA 1967). Indeed, "the very nature of the charge of fraud requires that it be proven 'to the hilt' with clear and convincing evidence. There is no room for speculation, inference or surmise and,

obviously, any doubt must be resolved against the charging party." Smith Int'l, Inc. v. Olin Corp., 209 USPQ 1033, 1044 (T.T.A.B. 1981).

The Court of Customs and Patent Appeals ("CCPA"), our predecessor whose decisions are binding on this court, explained that, before the PTO, "[a]ny 'duty' owed by an applicant for trademark registration must arise out of the statutory requirements of the Lanham Act," which prohibit an applicant from making "knowingly inaccurate or knowingly misleading statements." Bart Schwartz Int'l Textiles, Ltd. v. Fed. Trade Comm'n, 289 F.2d 665, 669 (CCPA 1961). Therefore, the court stated that, absent the requisite intent to mislead the PTO, even a material misrepresentation would not qualify as fraud under the Lanham Act warranting cancellation. King Auto., Inc. v. Speedy Muffler King, Inc., 667 F.2d 1008, 1011 n.4 (CCPA 1981).

Mandated by the statute and caselaw, the Board had consistently and correctly acknowledged that there is "a material legal distinction between a 'false' representation and a 'fraudulent' one, the latter involving an intent to deceive, whereas the former may be occasioned by a misunderstanding, an inadvertence, a mere negligent omission, or the like." Kemin Indus., Inc. v. Watkins Prods., Inc., 192 USPQ 327, 329 (T.T.A.B. 1976). In other words, deception must be willful to constitute fraud. Smith Int'l, 209 USPQ at 1043; see also Woodstock's Enters. Inc. (Cal.) v. Woodstock's Enters. Inc. (Or.), 43 USPQ2d 1440, 1443 (T.T.A.B. 1997); First Int'l Servs. Corp. v. Chuckles, Inc., 5 USPQ2d 1628, 1634 (T.T.A.B. 1988); Giant Food, Inc. v. Standard Terry Mills, Inc., 229 USPQ 955, 962 (T.T.A.B. 1986).

Several of our sister circuits have also required proof of intent to deceive before cancelling a trademark registration. See, e.g., Far Out Prods., Inc. v. Oskar, 247 F.3d

986, 996 (9th Cir. 2001) (stating that an affidavit was fraudulent only if the affiant acted with scienter); Aromatique, Inc. v. Gold Seal, Inc., 28 F.3d 863, 877-78 (8th Cir. 1994) (per curiam) ("In order to show that an applicant defrauded the PTO the party seeking to invalidate a mark must show that the applicant intended to mislead the PTO."); Meineke Discount Muffler v. Jaynes, 999 F.2d 120, 126 (5th Cir. 1993) ("To succeed on a claim of fraudulent registration, the challenging party must prove by clear and convincing evidence that the applicant made false statements with the intent to deceive [the PTO]."); San Juan Prods., Inc. v. San Juan Pools of Kan., Inc., 849 F.2d 468, 472 (10th Cir. 1988) (stating that in determining whether a statement is fraudulent, courts must focus on the "declarant's subjective, honestly held, good faith belief" (internal quotation marks and emphasis omitted)); Money Store v. Harriscorp Fin., Inc., 689 F.2d 666, 670 (7th Cir. 1982) ("Fraud will be deemed to exist only when there is a deliberate attempt to mislead the Patent Office into registering the mark.").

The Board stated in Medinol v. Neuro Vasx, Inc. that to determine whether a trademark registration was obtained fraudulently, "[t]he appropriate inquiry is . . . not into the registrant's subjective intent, but rather into the objective manifestations of that intent." 67 USPQ2d 1205, 1209 (T.T.A.B. 2003). We understand the Board's emphasis on the "objective manifestations" to mean that "intent must often be inferred from the circumstances and related statement made." Id. (internal quotation marks omitted) (quoting First Int'l Serv., 5 USPQ2d at 1636). We agree. However, despite the long line of precedents from the Board itself, from this court, and from other circuit courts, the Board went on to hold that "[a] trademark applicant commits fraud in procuring a registration when it makes material representations of fact in its declaration which it

knows or <u>should know</u> to be false or misleading." <u>Id.</u> (emphasis added). The Board has since followed this standard in several cancellation proceedings on the basis of fraud, including the one presently on appeal. <u>See</u> <u>Bose</u>, 88 USPQ2d at 1334.

By equating "should have known" of the falsity with a subjective intent, the Board erroneously lowered the fraud standard to a simple negligence standard. <u>See</u> <u>Ileto v. Glock, Inc.</u>, 565 F.3d 1126, 1155 (9th Cir. 2009) ("Knowing conduct thus stands in contrast to negligent conduct, which typically requires only that the defendant knew or <u>should have known</u> each of the facts that made his act or omission unlawful. . . ."); <u>see also</u> <u>Davis v. Monroe County Bd. of Educ.</u>, 526 U.S. 629, 642 (1999) (explaining that in <u>Gebser v. Lago Vista Independent School District</u>, 524 U.S. 274 (1998), the Court "declined the invitation to impose liability under what amounted to a negligence standard—holding the district liable for its failure to react to teacher-student harassment of which it knew or <u>should have</u> known. Rather, [the Court] concluded that the district could be liable for damages only where the district itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to acts of teacher-student harassment of which it had actual knowledge.").

We have previously stated that "[m]ere negligence is not sufficient to infer fraud or dishonesty." <u>Symbol Techs., Inc. v. Opticon, Inc.</u>, 935 F.2d 1569, 1582 (Fed. Cir. 1991). We even held that "a finding that particular conduct amounts to 'gross negligence' does not of itself justify an inference of intent to deceive." <u>Kingsdown Med. Consultants, Ltd. v. Hollister Inc.</u>, 863 F.2d 867, 876 (Fed. Cir. 1988) (en banc). The principle that the standard for finding intent to deceive is stricter than the standard for negligence or gross negligence, even though announced in patent inequitable conduct

cases, applies with equal force to trademark fraud cases. After all, an allegation of fraud in a trademark case, as in any other case, should not be taken lightly. San Juan Prods., 849 F.2d at 474 (quoting Anheuser-Busch, Inc. v. Bavarian Brewing Co., 264 F.2d 88, 92 (6th Cir. 1959)). Thus, we hold that a trademark is obtained fraudulently under the Lanham Act only if the applicant or registrant knowingly makes a false, material representation with the intent to deceive the PTO.

Subjective intent to deceive, however difficult it may be to prove, is an indispensable element in the analysis. Of course, "because direct evidence of deceptive intent is rarely available, such intent can be inferred from indirect and circumstantial evidence. But such evidence must still be clear and convincing, and inferences drawn from lesser evidence cannot satisfy the deceptive intent requirement." Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1366 (Fed. Cir. 2008). When drawing an inference of intent, "the involved conduct, viewed in light of all the evidence . . . must indicate sufficient culpability to require a finding of intent to deceive." Kingsdown, 863 F.2d at 876.

The Board in Medinol purportedly relied on this court's holding in Torres to justify a "should have known" standard. The Board read Torres too broadly. In that case, Torres obtained the trademark registration for "Las Torres" below a tower design. Torres, 808 F.2d at 47. The trademark was registered for use on wine, vermouth, and champagne. Id. In the renewal application, Torres submitted an affidavit stating that the mark as registered was still in use in commerce for each of the goods specified in the registration. Id. He even attached a specimen label with the registered mark displayed. Id. In fact, Torres was not using the mark as registered. Id. Instead, five

years prior to the renewal application, Torres had admittedly altered the mark to "Torres" in conjunction with a different tower design. Id. In addition, Torres knew that even the altered mark was in use only on wine. Id. In other words, the registrant knowingly made false statements about the trademark and its usage when he filed his renewal application. Id.

True, the court concluded that

> If a registrant files a verified renewal application stating that his registered mark is currently in use in interstate commerce and that the label attached to the application shows the mark as currently used when, in fact, he knows or should know that he is not using the mark as registered and that the label attached to the registration is not currently in use, he has knowingly attempted to mislead the PTO.

Id. at 49. However, one should not unduly focus on the phrase "should know" and ignore the facts of the case, i.e., the registrant "knows." Doing so would undermine the legal framework the court set out in Torres. Indeed, in Torres, the court cited various precedents—some persuasive, others binding on the court—and reemphasized several times that (1) fraud in trademark cases "occurs when an applicant knowingly makes false, material representations," (2) the Lanham Act imposes on an applicant the obligation not to "make knowingly inaccurate or knowingly misleading statements," and (3) a registrant must also "refrain from knowingly making false, material statements." Id. at 48. The "should know" language, if it signifies a simple negligence or a gross negligence standard, is not only inconsistent with the framework set out elsewhere in Torres, but would also have no precedential force as it would have conflicted with the precedents from CCPA. See Newell Cos. v. Kenney Mfg. Co., 864 F.2d 757, 765 (Fed. Cir. 1988). Certainly, the prior CCPA decisions cited in the Torres opinion were precedents binding on the Torres court. See S. Corp. v. United States, 690 F.2d 1368,

1369 (Fed. Cir. 1982). In fact, they still bind us because they have never been overturned en banc.[2]

Metro Traffic Control, Inc. v. Shadow Network Inc., 104 F.3d 336 (Fed. Cir. 1997) further supports our reading that the Torres holding does not deviate from the established rule that intent to deceive is required to find fraud. In Metro Traffic Control, the court cited Torres and reaffirmed that fraud can only be found if there is "a willful intent to deceive." 104 F.3d at 340. As a result, the court agreed with the Board that the applicant's statements, "though false, were not uttered with the intent to mislead the PTO." Id. at 340-41. Because the applicant's "misstatements did not represent a 'conscious effort to obtain for his business a registration to which he knew it was not entitled,'" the court affirmed the Board's ruling of no fraud. Id. at 341; see also L.D. Kichler Co. v. Davoil, Inc., 192 F.3d 1349, 1352 (Fed. Cir. 1999) (remanding the case so the district court may determine whether the trademark applicant "knowingly submitted a false declaration with an intent to deceive").

Applying the law to the present case, Mr. Sullivan, who signed the application, knew that Bose had stopped manufacturing and selling audio tape recorders and players at the time the Section 8/9 renewal was filed. Therefore, the statement in the renewal application that the WAVE mark was in use in commerce on all the goods, including audio tape recorders and players, was false. Because Bose does not

---

[2] The PTO argues that under Torres, making a submission to the PTO with reckless disregard of its truth or falsity satisfies the intent to deceive requirement. We need not resolve this issue here. Before Sullivan submitted his declaration in 2001, neither the PTO nor any court had interpreted "use in commerce" to exclude the repairing and shipping repaired goods. Thus, even if we were to assume that reckless disregard qualifies, there is no basis for finding Sullivan's conduct reckless.

challenge the Board's conclusion that such a statement was material, we conclude that Bose made a material misrepresentation to the PTO.

However, Mr. Sullivan explained that in his belief, Bose's repairing of the damaged, previously-sold WAVE audio tape recorders and players and returning the repaired goods to the customers met the "use in commerce" requirement for the renewal of the trademark. The Board decided that Bose's activities did not constitute sufficient use to maintain a trademark registration. See Bose, 88 USPQ2d at 1335-37. It also found Sullivan's belief not reasonable. Id. at 1338. We do not need to resolve the issue of the reasonableness as it is not part of the analysis. There is no fraud if a false misrepresentation is occasioned by an honest misunderstanding or inadvertence without a willful intent to deceive. Smith Int'l, 209 USPQ at 1043. Sullivan testified under oath that he believed the statement was true at the time he signed the renewal application. Unless the challenger can point to evidence to support an inference of deceptive intent, it has failed to satisfy the clear and convincing evidence standard required to establish a fraud claim.

We hold that Bose did not commit fraud in renewing its WAVE mark and the Board erred in canceling the mark in its entirety. Indeed, the purpose of the Section 8/9 renewal is "'to remove from the register automatically marks which are no longer in use.'" Torres, 808 F.2d at 48 (quoting Morehouse Mfg. Corp. v. J. Strickland & Co., 407 F.2d 881, 887 (CCPA 1969)). When a trademark registrant fulfills the obligation to refrain from knowingly making material misrepresentations, "[i]t is in the public interest to maintain registrations of technically good trademarks on the register so long as they are still in use." Morehouse, 407 F.2d at 888. Because "practically all of the user's

substantive trademark rights derive" from continuing use, when a trademark is still in use, "nothing is to be gained from and no public purpose is served by cancelling the registration of" the trademark.[3]  Id.

We agree with the Board, however, that because the WAVE mark is no longer in use on audio tape recorders and players, the registration needs to be restricted to reflect commercial reality.  See Bose, 88 USPQ2d at 1338.  We thus remand the case to the Board for appropriate proceedings.

### III.    CONCLUSION

For these reasons, the Board's decision is reversed and remanded.

### IV.    COSTS

Each party shall bear its own costs.

### REVERSED and REMANDED

---

[3]    Indeed, even though the Board cancelled the registration of the WAVE trademark, it continued to analyze Bose's common law right in the mark.  Eventually, the Board found likelihood of confusion and rejected Hexawave's application to register trademark HEXAWAVE.  Bose, 88 USPQ2d at 1342-43.