THIS OPINION IS A
PRECEDENT OF THE TTAB

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA 22313-1451

jk

Mailed: October 6, 2009

Opposition No. 91170364

ENBRIDGE, INC.

v.

EXCELERATE ENERGY LIMITED
PARTNERSHIP

**Before Hairston, Grendel and Cataldo,
Administrative Trademark Judges.**

**By the Board:**

This proceeding is before the Board for consideration
of opposer's motion and applicant's cross-motion for summary
judgment. Subsequent to briefing of the motions, both
parties sought leave to supplement their filings to reflect
the recent issuance of *In re Bose Corp.*, __ F.3d __, 91
USPQ2d 1938 (Fed. Cir. 2009). As will be apparent from the
instant order, supplemental briefing is not necessary and we
have considered the cross-motions in light of the *Bose*
decision.

The Involved Application and Pleadings

On June 25, 2005, applicant filed an application to
register the mark ENERGY BRIDGE (standard characters, ENERGY
disclaimed) for "transmission of oil and gas through
pipelines and ships" in International Class 39, and for

"production of energy" in International Class 40."[1]  The
mark was published for opposition, listing these services.

Opposer filed a notice of opposition to the
registration of the mark, alleging priority and likelihood
of confusion under Trademark Act Section 2(d), dilution
under Trademark Act Section 43, and mere descriptiveness
under Trademark Act Section 2(e)(1).  Opposer pleaded
ownership of Registration No. 2987646 for the mark ENBRIDGE,
alleging that said registration is valid and subsisting, and
that it includes, inter alia, the following:[2]

> International Class 9 - Computer software and systems
> comprising central processing units, communication
> links, sensors, supervisory control, pressure and flow
> measurement gauges and instruments for the management
> and maintenance of pipelines and training manuals and
> instruction materials on the subject of pipeline
> operations, management, maintenance, efficiency, design
> and safety recorded on videotape, computer disk or
> downloadable from the Internet;
>
> International Class 16 - Printed training manuals and
> instruction materials on the subject of pipeline
> operations, management, maintenance, efficiency,
> design, technology and safety;
>
> International Class 37 - Construction and installation
> of pipelines; installation, maintenance, and repair of
> equipment for conveying natural gas; installation,
> maintenance, and repair of pipes, valves, meters and
> other equipment for supplying natural and liquefied
> petroleum gas to commercial and industrial users and
> pipeline maintenance services;
>
> International Class 39 – Operating pipes, valves,
> meters and other equipment for supplying liquid
> hydrocarbons, natural and liquefied petroleum gas to
> residential, commercial and industrial users;

---

[1] Application Serial No. 78658321, alleging use of the mark in
commerce pursuant to Trademark Act Section 1(a), and alleging,
for both International Classes 39 and 40, a date of first use and
date of first use in commerce of July 1, 2003.
[2] Registration No. 2987646, registered August 23, 2005, in
sixteen international classes of goods and services.

transporting natural and liquefied petroleum gas and liquid hydrocarbons to commercial and industrial users; transportation and storage of energy and water resources; operation of pipelines, namely, transporting crude oil and natural gas to consumers; operation of truck and marine terminals, and gas and liquid hydrocarbon terminals; public utility services;

International Class 42 – Providing energy management, measurement and consulting services; consulting services in the field of pipeline operations, maintenance, efficiency and safety and consulting services in the field of computer systems and software for the operation, maintenance, design and technology of pipelines.

In its answer, applicant denied the salient allegations in the notice of opposition.

On January 26, 2007, the Board approved and entered a January 23, 2007 consented amendment ("Consented Motion to Clarify Applicant's Identification of Services") to the identification of services in the involved application. By such amendment, the Class 39 services were amended to:

"transmission of natural gas by means of liquefaction in the country of severance, shipment across oceans or seas to the countries of use, ship to ship transmission of natural gas shipboard liquefaction, shipboard vaporization, and delivery of natural gas to the countries of use through either specifically designed offshore deepwater ports or specialized jetties at which the vessels would dock, followed by transmission through onshore pipelines,"

and the Class 40 services were amended to:

"treatment of natural gas for the production of energy via liquefaction in the country of severance, shipment across oceans or seas, and offshore, shipboard vaporization in the country of use."[3]

---

[3] On January 16, 2008, applicant filed an unconsented "motion to clarify" seeking to again amend the identification of services, and to amend the dates of first use and first use in commerce to June 25, 2005, the filing date of its application. On January 29, 2008, the Board deferred consideration of said motion until final decision or upon summary judgment. Consideration of applicant's unconsented motion to amend is again deferred until

3

On December 22, 2008, the Board granted opposer's motion for leave to file an amended notice of opposition. The operative amended notice of opposition alleges the grounds identified above, and in paragraphs 9 and 10 thereof, adds claims of fraud. In its fraud claims, opposer alleges: 1) that applicant had not used its mark for "transmission of oil" in Class 39, as identified in the original application, as of the June 25, 2005 filing date thereof; 2) that applicant has not ever used its mark for "production of energy" in Class 40, as identified in the original application; 3) that applicant has not used its mark for the transmission of natural gas by means of "liquefaction in the country of severance," "shipboard liquefaction," and "through onshore pipelines" in Class 39, as amended on January 23, 2007; 4) that applicant has not used its mark for the "production of energy" or "treatment of natural gas for the production of energy via liquefaction in the country of severance," in Class 40, as amended on January 23, 2007. In addition, opposer alleges that applicant knew or should have known that it was not using its mark on such services as of the filing date of the application and, therefore, applicant has committed fraud.

In its answer to the amended notice of opposition, applicant denied most of the salient allegations, and, with respect to paragraph 9, denied the stated allegations, but

this case is decided on final hearing. *See* TBMP § 514.03 (2d ed. rev. 2004).

admitted that "it has not used ENERGY BRIDGE as a service mark for the 'transmission of oil.'"

By its motion for summary judgment, opposer seeks entry of judgment on its fraud claim. By its cross-motion, applicant seeks entry of judgment on the issue of opposer's standing.

### **Analysis**

A party is entitled to summary judgment when it has demonstrated that there are no genuine issues as to any material facts, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The evidence must be viewed in a light favorable to the nonmoving party, and all justifiable inferences are to be drawn in the nonmovant's favor. *Opryland USA Inc. v. The Great American Music Show, Inc.,* 970 F.2d 847, 23 USPQ2d 1471 (Fed. Cir. 1992).

A party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact, and its entitlement to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). When the moving party's motion is supported by evidence sufficient, if unopposed, to indicate that there is no genuine issue of material fact, and that the moving party is entitled to judgment, the burden shifts to the nonmoving party to demonstrate the existence of issues of material fact which must be resolved at trial. The nonmoving party may not rest on mere denials or conclusory assertions, but rather must proffer countering evidence, by affidavit or as otherwise

provided in Fed. R. Civ. P. 56, showing that there is a genuine factual dispute for trial. *See* Fed. R. Civ. P. 56(e); Wright, Miller & Kane, 10B *Fed. Prac. & Pro. Civ.* 3d § 2739 (2007).

The U.S. Court of Appeals for the Federal Circuit recently set forth a standard to be applied in analyzing a claim of fraud in procuring a trademark registration. Specifically, the Federal Circuit has held that fraud occurs when an applicant knowingly makes a false, material representation with the intent to deceive the USPTO. The standard for finding intent to deceive is stricter than the standard for negligence or gross negligence, and evidence of deceptive intent must be clear and convincing. *Bose,* 91 USPQ2d at 1941. The rigorous clear and convincing evidence standard is strictly applied. *See Grand Canyon West Ranch, LLC v. Hualapai Tribe,* 88 USPQ2d 1501, 1508 (TTAB 2008).

The Federal Circuit further held that there is no fraud if a false misrepresentation is occasioned by an honest misunderstanding or inadvertence without a willful intent to deceive. *Bose,* 91 USPQ2d at 1942, citing *Smith Int'l, Inc. v. Olin Corp.,* 209 USPQ 1033, 1043 (TTAB 1981). Unless a party alleging fraud can point to clear and convincing evidence that supports drawing an inference of deceptive intent, it will not be entitled to judgment on a fraud claim. *Bose,* 91 USPQ2d at 1942.[4]

---

[4] Clear and convincing evidence of fraud may be direct and unequivocal evidence of intent to deceive. However, as noted in *Bose*, intent to deceive can also be inferred from the

Finally, any doubt must be resolved against the party making a claim of fraud. *Id.* at 1939; *Sinclair Oil Corp. v. Kendrick,* 85 USPQ2d 1032, 1035 (TTAB 2007); *Smith Int'l,* 209 USPQ at 1044.

**Opposer's Motion for Summary Judgment**

International Class 39 services: Opposer seeks summary judgment on its fraud claim, set forth in its amended notice of opposition. Opposer alleges that as of the filing date of the involved use-based application, applicant was not using its mark in connection with the "transmission of oil" in Class 39, or in connection with the services as amended January 23, 2007, in particular, for the transmission of natural gas by means of "liquefaction in the country of severance," "shipboard liquefaction," and "through onshore pipelines." Opposer asserts that the statements made in the application were false, and that applicant thereby committed fraud on the USPTO.

In support of its motion, opposer submitted the declaration of attorney Saundra L.M. Riley, which introduces, inter alia, the transcript of the discovery deposition of Kathleen Eisbrenner, applicant's former President, Chief Executive Officer and sole corporate designee under Fed. R. Civ. P. 30(b)(6), and an individual with experience in the natural gas industry since 1982. Specifically, opposer relies on the deposition insofar as it indicates the following:

---

circumstances, so long as the evidence meets the clear and convincing standard. *Bose,* 91 USPQ2d at 1941.

Q. And I apologize if I've asked this, but has Excelerate ever considered getting into the marine transportation of oil?

A. No.

Opposer also relies on applicant's answer to paragraph 9 of the amended notice of opposition. In that paragraph, opposer alleges that applicant had not used its mark in connection with some of the Class 39 services, as amended on January 23, 2007, as of the filing date of the application.[5] Applicant's answer to paragraph 9 states: "[D]enied, except that Excelerate Energy admits that it has not used ENERGY BRIDGE as a service mark for the 'transmission of oil.'"

In response, applicant characterizes the statement in its application that it provided "transmission of oil" as "an inadvertent, honest mistake," stating, inter alia, that it "has admitted that it did not transmit oil as of the critical date," that by amending its identification of services it "corrected its error in good faith," and that its statement in its application that it was engaged in the transmission of oil and gas by ship was accurate "except for its reference to oil."

Based on the record before us, and applying the standard set forth in *In re Bose,* we conclude that opposer has failed to meet its burden of establishing that there is no genuine issue that applicant had the intent to deceive the USPTO when it stated in its application that it was using its ENERGY BRIDGE mark for "transmission of oil" as of the filing date of the

---

[5] Specifically, in reference to applicant's identification, as amended, opposer alleges that applicant had not used its mark in connection with the transmission of natural gas by means of

8

application.  At a minimum, whether applicant knowingly made this representation of use with the intent to deceive the USPTO remains a genuine issue of fact to be determined at trial.[6]

Accordingly, opposer has not established the absence of a genuine issue of material fact as to its fraud claim with respect to Class 39.  In view thereof, opposer is not entitled to judgment as a matter of law, and its motion for summary judgment with respect to Class 39 is <u>denied</u>.

<u>International Class 40 services:</u>  In its amended notice of opposition, opposer alleges that, as of the filing date of the application, applicant was not using its mark in connection with the "production of energy" in Class 40, that the statement in the application that the mark was in use for such services was false, and that applicant thereby committed fraud on the USPTO.  Opposer also asserts a fraud allegation with respect to applicant's Class 40 identification of services as it was amended on January 23, 2007 to read: "treatment of natural gas for the production of energy via liquefaction in the country of severance, shipment across oceans or seas, and offshore, shipboard vaporization in the country of use."  With respect to the latter claim in particular, opposer alleges that applicant "does not provide any services for the 'production of energy,' let alone 'treatment of natural gas for the production of energy via liquefaction in the country of severance.'"

---

"liquefaction in the country of severance," "shipboard liquefaction," and "through onshore pipelines."
[6] Similarly, this genuine issue of fact remains for trial with respect to opposer's fraud claim on applicant's Class 39 identification of services, *as amended* on January 23, 2007.

9

Opposer seeks summary judgment on the claim that applicant had not used its mark for the "production of energy" or "treatment of natural gas for the production of energy via liquefaction in the country of severance" as of the time of filing its application. In this regard, opposer points to, inter alia, materials submitted under the declaration of Saundra L.M. Riley. Such materials include the transcript of the discovery deposition of Kathleen Eisbrenner, which reads:

> Q. Do you believe that Excelerate is engaged in the production of energy?
> A. No.

Such materials also include the transcript of Ms. Eisbrenner's testimony deposition, which reads:[7]

> Q. Excelerate doesn't participate in producing energy, right?
> A. Correct.
> Q. Do they plan to?
> A. No.

Opposer also relies on materials submitted under the declaration of attorney R.J. Heher, which introduces, inter alia, trial testimony of Ms. Eisbrenner indicating that applicant obtains natural gas from third parties in liquefied form, and that regasification of liquefied natural gas is not a treatment of natural gas for the production of energy.

In response, applicant maintains that it "is involved in the production of energy." Specifically, applicant explains that it is "an importer of liquefied natural gas (LNG), a provider of offshore regasification services, and a developer

---

[7] By stipulation, the parties took Ms. Eisbrenner's trial testimony prior to commencement of the first trial period, due to her anticipated unavailability during the trial period.

of offshore LNG solutions," that it "has nine proprietary LNG cargo vessels that are specifically designed for the transportation and regasification of LNG," that under a "broad interpretation of" "production of energy," its services "fall within that gamut," and that production of energy "is a technical description that is subject to more than one interpretation." Applicant asserts that the opinion Ms. Eisbrenner gave in her testimony "does not amount to a binding legal conclusion as to the meaning of the 'production of energy.'"

Applicant submitted the declaration of attorney Penina Michlin Chiu, which introduces, inter alia, 1) six pages from applicant's website, previously produced in response to discovery, which explain that applicant "is an importer of liquefied natural gas (LNG), a provider of offshore regasification services, and a developer of offshore LNG solutions;" 2) pages from the Federal Energy Regulatory Commission's website; 3) excerpts from opposer's responses to requests for admissions and opposer's website, produced in discovery; and 4) definitions of "production," "produce" and "energy" from *Merriam-Webster Collegiate Dictionary on CD-ROM* (11th ed., 2004), from which applicant concludes that "production of energy" means "the act or process of creating a source of usable power or the resources for producing such power."[8]

---

[8] The Chiu declaration also includes pages from applicant's own response to opposer's motion for leave to amend the notice of opposition, wherein applicant stated the reasons why it believed

We conclude that opposer has failed to meet its burden of establishing the absence of a genuine issue that applicant had the intent to deceive the USPTO when it stated in its application that it was using its ENERGY BRIDGE mark for "production of energy" as of the filing date of the application. In addition, the record does not support the conclusion that there is no genuine issue that applicant had the requisite intent to deceive when it asserted use of its mark in connection with the services, as amended on January 23, 2007. At a minimum, whether applicant knowingly made either of these representations of use with the intent to deceive the USPTO remains a genuine issue of fact to be determined at trial.

Furthermore, the present record includes no single, industry-specific definition of "production of energy." Given that this record is unclear with respect to the meaning of "production of energy," a genuine issue exists as to a pivotal element of the fraud claim, namely, whether applicant's statement that it was using its mark in connection with "production of energy" was, in fact, false. Inasmuch as "production of energy" constitutes the entirety of applicant's Class 40 identification of services, as filed, the lack of clear and convincing evidence on the issue of whether applicant made a false statement regarding use of its mark in connection

---

the statement in its application that it used the mark for "production of energy" was accurate. A party may not rely on unsupported statements in its brief to demonstrate that there is a genuine issue, but rather must support its arguments by

with the identified services mandates denial of opposer's motion.[9]

Accordingly, opposer has not established the absence of a genuine issue of material fact as to its fraud claim with respect to Class 40, and it is not entitled to judgment as a matter of law. In view thereof, opposer's motion for summary judgment with respect to Class 40 is <u>denied</u>.

### <u>Applicant's Cross-Motion for Summary Judgment</u>

Applicant seeks summary judgment on the issue of opposer's standing to bring this opposition, asserting that, as a matter of law, opposer lacks standing inasmuch as it has failed to plead or prove facts sufficient to show either a real interest in the proceeding or a reasonable basis for its belief of damage. In particular, applicant maintains that opposer lacks standing to bring its descriptiveness and likelihood of confusion claims, arguing that opposer is not a competitor of applicant, and that the transportation of natural gas via land-based pipelines on one hand (opposer's services), and the transportation of liquefied natural gas (LNG) via ships on the

---

affidavit or other evidence. *See* TBMP § 528.05(2d ed. rev. 2004), and cases cited therein.

[9] The Board may, in its discretion, take judicial notice of dictionary definitions from certain sources. *See In re CyberFinancial.Net Inc.,* 65 USPQ2d 1789, 1791 n.3 (TTAB 2002) (Board may take judicial notice of online dictionary definition where resource is also available in printed format); *University of Notre Dame du Lac v. J. C. Gourmet Food Imports Co.,* 213 USPQ 594 (TTAB 1982), aff'd, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983)(Board may take judicial notice of use of a term in dictionaries). However, we decline to do so in considering opposer's motion for summary judgment inasmuch as the wording at issue is a phrase that may have an industry-specific meaning, the global trading of natural gas appears to involve a unique process or processes, and the parties have not set forth and addressed a single, definable meaning of "production of energy."

other hand (applicant's services) are different, mutually exclusive services.  Applicant further posits that opposer's expansion into the applicant's business is unlikely given the large economic barriers to entry into the liquefied natural gas market.

In response to the motion, opposer argues that it has a real interest in the proceeding, and thus has standing, asserting that its Registration No. 2987646 covers "energy and water resource treatment" in Class 40, as well as the following services in Class 39:

> [O]perating pipes, valves, meters and other equipment for supplying … natural and liquefied petroleum gas to residential, commercial and industrial users; transporting natural and liquefied petroleum gas… to commercial and industrial users; transportation and storage of energy and water resources; operation of pipelines, namely, transporting crude oil and natural gas to consumers…

Opposer further argues, inter alia, that its mark ENBRIDGE is a derivation of the terms "energy" and "bridge," and submits, under the declaration of attorney R.J. Heher, testimony of applicant's Fed. R. Civ. P. 30(b)(6) witness which states, in pertinent part, that liquefied natural gas (LNG) is a segment of the natural gas industry, that LNG and natural gas that has never been liquefied or regasified are the same, and that LNG is an alternative to delivery of natural gas via other conventional methods, such as through pipelines.

Standing is a threshold inquiry made by the Board in every inter partes case.  The U.S. Court of Appeals for the

Federal Circuit has stated that a party may establish its standing to oppose by showing that it has a "real interest" in the case, that is, a personal interest in the outcome of the proceeding, and a reasonable basis for its belief that it will be damaged by the issuance of the registration. *See Lipton Industries, Inc. v. Ralston Purina Co.,* 670 F.2d 1024, 213 USPQ 185, 188 (CCPA 1982). To demonstrate a "real interest" in the case, opposer must allege a "direct and personal stake" in the outcome of the proceeding, and the allegations in support of its belief of damage must have a reasonable basis in fact. *See Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1026-1027 (Fed. Cir. 1999). *See also* TBMP § 309.03(b)(2d ed. rev. 2004).

Here, applicant has failed to demonstrate the absence of a genuine issue with respect to its assertion of opposer's lack of standing, and thus has failed to meet its burden of establishing its entitlement to judgment as a matter of law. At a minimum, an issue of fact remains regarding whether the parties' respective services are so unrelated that the parties are not competitors in the relevant marketplace.[10]

---

[10] Applicant argues that opposer "has failed to prove that its likelihood of confusion claim has any credibility," and that no reasonable fact finder could find in opposer's favor with respect to likelihood of confusion, setting forth an analysis of several of the factors in *In re E.I. du Pont de Nemours & Co.,* 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). Applicant's assertions that opposer cannot prevail on the merits of its likelihood of confusion and descriptiveness claims are not relevant to the standing inquiry insofar as there is no requirement that opposer prove its claims or prove actual damage in order to establish its standing. See TBMP §§ 303.03 and 309.03(b)(2d ed. rev. 2004), and cases cited therein. Furthermore, if an opposer can show standing as to one ground, it has the right to assert any other ground as well. *See, e.g.,*

In view thereof, applicant's cross-motion for summary judgment is <u>denied</u>.

In summary, 1) opposer's motion for summary judgment on its fraud claims is denied, and 2) applicant's cross-motion for summary judgment on the issue of opposer's standing is denied.[11] This opposition shall proceed to trial.

### **Schedule**

Proceedings are resumed.  Discovery and trial dates are hereby reset as follows:

| | |
|---|---|
| DISCOVERY PERIOD TO CLOSE: | **01/08/10** |
| Testimony period for party in position of plaintiff to close: | **04/08/10** |
| Testimony period for party in position of defendant to close: | **06/07/10** |
| Rebuttal testimony period to close: | **07/22/10** |

In each instance, a copy of the transcript of testimony together with copies of documentary exhibits, must be served on the adverse party within thirty days after completion of the taking of testimony.  Trademark Rule 2.l25.

---

*Liberty Trouser Co., Inc. v. Liberty & Co., Ltd.*, 222 USPQ 357, 358 (TTAB 1983).

[11] The fact that we have identified genuine issues of material fact in denying the motion and cross-motion for summary judgment should not be construed as a finding that such issues necessarily are the only ones that remain for trial.  Also, the parties should note that the evidence submitted in connection with the motion and cross-motion is of record only for consideration of those motions.  To be considered at final hearing, any such evidence must be properly introduced in evidence during the appropriate trial period.  *See* Trademark Rule 2.122.  *See also Hard Rock Cafe Licensing Corp. v. Elsea,* 48 USPQ2d 1400 (TTAB 1998); *Levi Strauss & Co. v. R. Josephs Sportswear Inc.,* 28 USPQ2d 1464 (TTAB 1993).

Briefs shall be filed in accordance with Trademark Rules 2.128(a) and (b). An oral hearing will be set only upon request filed as provided by Trademark Rule 2.129.

_____