As an initial matter, Teeter-Totter urges the Court to consider the text of the Assignment Document itself, which Palm Wine attached to the Counterclaims as "Tab A." Mot. at 5-6; see ECF No. 31 at 15-16. As stated above, a document attached to a pleading is a part of the pleading, and the Court "may assume that its contents are true." Ritchie , 342 F.3d at 908. Thus, the Court considers the Assignment Document as part of the pleading and assumes its truth.
*1107 The text of the Assignment Document contradicts Palm Wine's allegation that the Assignment Document "does not convey rights to Mr. Touquette of the entire business of Mr. Guillome related to the TEETER-TOTTER brand." See ECF No. 31 ¶ 25). The Assignment Document states that Touquette and Guillome transfer to Touquette "all right, title, and interest throughout the world in and to the name and trademark TEETER-TOTTER," as well as "any and all goodwill of the business connected with the use of, and symbolized by, the same, and the business in connection with which the trademark is intended to be used." ECF No. 31 at 16.
Teeter-Totter contends that "[a]n assignment between joint applicants"-in this case, Touquette and Guillome-"cannot violate the Lanham Act's prohibition on assigning intent-to-use applications." Mot. at 7. For support, Teeter-Totter cites to Amazon Technologies, Inc. v. Wax , 95 U.S.P.Q.2d 1865, 2010 WL 3597254 (T.T.A.B. 2010). In Amazon Technologies , the Trademark Trial and Appeal Board ("TTAB") interpreted § 1060(a)(1) as not prohibiting transfers between joint applicants on the basis that an assignment must be "to another." Id. at *8. Amazon Technologies concerned an almost identical transaction to that executed via the Assignment Document in the instant case; one joint applicant transferred the mark application to the sole possession of the other joint applicant. Id. The TTAB concluded that such a transfer "is more in the nature of a 'relinquishment' of ownership rights by one of the joint owners than a true 'assignment' to a different legal entity," and thus is not barred by § 1060(a)(1). Id. at *9 ; see also Central Garden & Pet Co. v. Doskocil Mfg. Co., Inc. , 2013 WL 4635990, at *15 (T.T.A.B. 2013) (characterizing Amazon Technologies as involving a "relinquish[ment] of rights" that did not constitute a § 1060(a)(1) assignment).
Palm Wine contends that the TTAB's interpretation of § 1060(a)(1) in Amazon Technologies was "flawed and improper," and that it contravenes this Court's decision in Sebastian Brown Productions, LLC v. Muzooka, Inc. , 2016 WL 949004 (N.D. Cal. Mar. 14, 2016). Opp. at 14. Under Muzooka , Palm Wine contends, the central question is "whether an 'ongoing and existing' business existed at the time of the assignment." Id. However, the Court only addresses that question if it concludes that an assignment was subject to § 1060(a)(1). See Central Garden , 2013 WL 4635990 at *17 (analyzing whether an assignment was to a successor only after concluding that trademark transfer was an assignment rather than a relinquishment). Muzooka , which applied § 1060(a)(1), and Amazon Technologies , which concluded that § 1060(a)(1) does not apply to transfers of mark registrations between joint applicants, are thus not at odds.
The Court is persuaded by the reasoning of Amazon Technologies . See Grupo Gigante SA De CV v. Dallo & Co., Inc. , 391 F.3d 1088, 1095 (9th Cir. 2004) (stating that the Ninth Circuit respects the TTAB's "expertise" and that the TTAB's "decisions create expectations"). As the TTAB stated in Amazon Technologies , an "assignment" is a transfer of property to another. 2010 WL 3597254 at *8 (citing Black's Law Dictionary 62 (5th ed. abridged 1983) ). In this case, the Assignment Document only removed Guillome as an owner of the intent-to-use registration. See ECF No. 31 at 16. Touquette owned the mark before and after the Assignment Document's execution; there was thus no transfer to another. Accordingly, the Court concludes that the transfer executed via the Assignment Document was not an assignment subject to § 1060(a)(1), and that Palm Wine's Second Counterclaim must be dismissed.
*1108 Moreover, even if the transfer executed via the Assignment Document was an assignment rather than a relinquishment of rights, Palm Wine has not sufficiently alleged that the assignment violated the Lanham Act. The Assignment Document states that Guillome and Touquette transferred to Touquette "any and all goodwill of the business connected with the use of, and symbolized by, the same, and the business in connection with which the trademark is intended to be used." ECF No. 31 at 16. Thus, the Assignment Document contradicts Palm Wine's allegation that Guillome and Touquette failed to transfer to Touquette the "entire business of Mr. Guillome related to the TEETER-TOTTER brand." ECF No. 31 ¶ 25. Absent such an allegation, Palm Wine's Second Counterclaim fails as a matter of law.
Perhaps as a result, Palm Wine recharacterizes the Second Counterclaim in its briefing. Palm Wine contends in its opposition that because "there was no ongoing and existing business for TEETER-TOTTER wine," the Assignment Document constituted an invalid assignment. Opp. at 11. Palm Wine argues that this case is analogous to Muzooka , which concerned a transfer between an individual and an LLC of which the individual was the sole owner. 2016 WL 949004 at *1. The dispute in Muzooka was whether the LLC "succeeded to an 'ongoing and existing' business" under the terms of § 1060(a)(1). Id. at *9. This Court concluded that an ongoing and existing business "requires at least some use of the mark in commerce," and that because the plaintiff had not alleged such use, his claims should be dismissed. Id. at *11-12.
Palm Wine asserts that, as in Muzooka , because Teeter-Totter had "no ongoing and existing business" and "no goodwill associated with the mark" as of the date of execution of the Assignment Document, the Assignment Document was invalid. Opp. at 11. The essence of Palm Wine's argument is that "any goodwill that could have possibly existed in the TEETER-TOTTER mark as of March 20, 2014 belonged to distinct corporate legal entities" rather than to Guillome and Touquette. Id. at 12. However, as Teeter-Totter points out on reply, Palm Wine's Second Counterclaim includes no such allegation about Guillome and Touquette's ongoing and existing business. See Reply at 4. The factual allegations that Palm Wine includes in its briefing to support its argument that Teeter-Totter had no ongoing and existing business, see Opp. at 12-13, are not in the Counterclaim.[1] Instead, the basis for Palm Wine's second Counterclaim is that "the Assignment document does not convey rights to Mr. Touquette of the entire business of Mr. Guillome related to the TEETER-TOTTER brand." ECF No. 31 ¶ 25. The Assignment Document itself contradicts that allegation.
Accordingly, even if the transfer executed in the Assignment Document was an "assignment" under 15 U.S.C. § 1060(a)(1), Palm Wine has not sufficiently alleged that Teeter-Totter violated the Lanham Act's prohibition on assignment of intent-to-use applications. The Court therefore GRANTS Teeter-Totter's motion to dismiss Palm Wine's second Counterclaim.
B. Third Counterclaim
In its Third Counterclaim, Palm Wine alleges that Teeter-Totter obtained the *1109 word mark, U.S. design mark, and California design mark by fraud because Teeter-Totter stated a false date of first use in each of its trademark applications. ECF No. 31 ¶¶ 29-35. Palm Wine seeks cancellation of all three marks. Id. ¶ 35. Teeter-Totter moves to dismiss the Third Counterclaim on the basis that the date of first use is immaterial to whether the USPTO or California grant a trademark application. Mot. at 8-10.
The Lanham Act permits a third party to petition to cancel a trademark whose "registration was obtained fraudulently." 15 U.S.C. § 1064(3). "Fraud in procuring a trademark occurs when an applicant knowingly makes false, material representations of fact in connection with his application." In re Bose Corp. , 580 F.3d 1240, 1243 (Fed. Cir. 2009) (internal quotation marks and citation omitted). Establishing a claim of trademark fraud requires "proof of intent to deceive." Id. (citing, inter alia , Far Out Prods., Inc. v. Oskar , 247 F.3d 986, 996 (9th Cir. 2001) ). A misrepresentation is material if the fact "would have affected the PTO's action on the application[ ]." Orient Exp. Trading Co., Ltd. v. Federated Dep't Stores, Inc. , 842 F.2d 650, 653 (2d Cir. 1988).
To obtain registration of a federal trademark, the applicant must allege that he or she is "the owner of the mark sought to be registered," that "the mark is in use in commerce," and that "no other person has the right to use such mark in commerce." 15 U.S.C. § 1051(a)(3). If a trademark owner instead applies for and receives registration on an intent-to-use basis under § 1051(b), the trademark owner must, within six months, supply "a verified statement that the mark is in use in commerce and specify[ ] the date of the applicant's first use of the mark in commerce." Id. at § 1051(d)(1). "Subject to examination and acceptance of the statement of use," the USPTO then registers the trademark. Id.
Teeter-Totter cites to two TTAB cases to support its argument that the date of first use is not material to the USPTO's decision to issue registration. Mot. at 9. In Colt Industries Operating Corp. v. Olivetti Controllo Numerico S.P.A. , 221 USPQ 73, 1983 WL 51834 (TTAB 1983), the TTAB considered a trademark applicant's claim that an opposing company had obtained its trademark by fraud. Id. at *1. The TTAB rejected the applicant's contention that a misrepresentation about the date of first use constituted fraud because when there are conflicting marks, an examining attorney "gives no consideration to alleged dates of first use." Id. at *3. Instead, "[t]he only fraud that could be perpetrated on the Office with respect to false dates of first use in an application would be where no use was made as of the filing date of the application." Id. More recently, the TTAB addressed whether a statement of use supplementing an intent-to-use application under § 1051(b) was fraudulent. See Std. Knitting Ltd. v. Toyota Jidosha Kabushiki Kaisha , 77 U.S.P.Q.2d 1917, 2006 WL 173463 (T.T.A.B. 2006). The TTAB cited Colt Industries for the proposition that "[t]he critical question is whether the marks were in use in connection with the identified goods as of the ... filing date of the statement of use in the intent-to-use application." Id. at *10. "If the mark was in current use, then the first use, even if false is not fraud." Id.
The Ninth Circuit has similarly held that "[t]he claim of a date of first use is not a material allegation as long as the first use in fact preceded the application date." Pony Exp. Courier Corp. of Am. v. Pony Exp. Delivery Serv. , 872 F.2d 317, 319 (9th Cir. 1989) ; see also Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc. , 522 F.3d 1200, 1210 (11th Cir. 2008) ("A misstatement of the date of first use in the application is not fatal to the securing of a valid registration as long as there has been *1110 valid use of the mark prior to the filing date.").
In its opposition, Palm Wine attempts to shift the focus from its allegations about Touquette's first-use statements. Instead, Palm Wine contends that its Lanham Act fraud claim rests on the allegation that Touquette made false statements about "the date of first use in commerce; ownership of the mark; and prior use in commerce at all as of April 24, 2014." Opp. at 16. However, Palm Wine's Third Counterclaim includes no factual allegations about the latter two sets of false statements. See ECF No. 31 ¶ 31 (asserting the untruth only of Teeter-Totter's statements about the date of first use).
It is clear from the authorities cited above that Palm Wine cannot state a Lanham Act fraud claim based on Touquette's false statements about Teeter-Totter's date of first use in commerce. Further, the two out-of-circuit district court cases that Palm Wine cites are not relevant. For example, in City of New York v. Tavern on the Green, L.P. , 427 B.R. 233 (S.D.N.Y. 2010), the district court concluded that the applicant had committed fraud because the applicant made false representations about another owner's first use of the mark the applicant sought to register. Id. at 243. Those misrepresentations about ownership and others' prior use "bore directly on [applicant's] right to register the mark," and were thus material. Id. City of New York did not hold that an applicant's false statements about its own first use of a trademark were material. The same is true of Select Export Corp. v. Richeson , 2011 WL 13135114 (S.D. Fla. May 5, 2011). In Select Export , the district court held that misstatements about the ownership of a mark-not about an applicant's own date of first use-constituted fraud on the USPTO. Id. at *7-8.
Accordingly, Palm Wine's allegations that Touquette made false statements about Teeter-Totter's's date of first use in commerce are not sufficient to state a claim for fraud under 15 U.S.C. § 1064(3). Moreover, "trademark claims under California law 'are substantially congruent' with federal claims and thus lend themselves to the same analysis." Grupo Gigante , 391 F.3d at 1100 (citing Playboy Enters., Inc. v. Netscape Commc'ns Corp. , 354 F.3d 1020, 1024 n.10 (9th Cir. 2004) ). Thus, Palm Wine's allegations cannot state a claim for fraud to cancel Teeter-Totter's California design mark registration.
The Court therefore GRANTS Teeter-Totter's motion to dismiss (1) Palm Wine's Second Counterclaim for violation of the Lanham's Act intent-to-use assignment prohibition; and (2) Palm Wine's Third Counterclaim for fraud. The Court also dismisses Palm Wine's First Counterclaim for declaratory relief to the extent that it is premised on Teeter-Totter's alleged violations of the Lanham Act. The Court affords Palm Wine leave to amend because Palm Wine may be able to allege sufficient facts to support its Lanham Act claims. See Lopez , 203 F.3d at 1127 (holding that "a district court should grant leave to amend ... unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted) ).
C. Attorney's Fees and Costs
Teeter-Totter also moves for attorney's fees and costs because, it contends, Palm Wine's Second and Third Counterclaims "were brought frivolously and/or with an improper motive to needlessly expand the scope and increase the expense of this litigation." Mot. at 10. On reply, Teeter-Totter clarifies that it asks the court to exercise its inherent authority to award attorney's fees or its authority under 28 U.S.C. § 1927, which provides that "[a]ny attorney ... who so multiplies *1111 the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." The Court concludes that although Palm Wine failed to state claims as a matter of law, the Second and Third Counterclaims were not so frivolous as to warrant an award of attorney's fees and costs. Thus, the Court DENIES Teeter-Totter's request for attorney's fees and costs.
IV. CONCLUSION
For the foregoing reasons, the Court DISMISSES Palm Bay's Second and Third Counterclaims with leave to amend.
IT IS SO ORDERED.

For that reason, the Court denies as moot Palm Wine's request that the Court take judicial notice "that Fait Main Wines, LLC is a California limited liability company ... formed by Robert M. Fanucci on July 16, 2012." Opp. at 4 n.2. There are no allegations about Fait Main Wines, LLC in the Counterclaim; Fait Main's ownership is thus irrelevant to the instant motion.