**ANHING CORPORATION**

v.

**THUAN PHONG COMPANY LIMITED, et al**

**CV 13–05167 BRO (MANx)**

United States District Court, C.D. California.

Signed 04/17/2015

A. Eric Bjorgum, Marc Karish, Karish and Bjorgum PC, Pasadena, CA, Jeffrey A. Kobulnick, Joseph M. Rothberg, Mark D. Brutzkus, Brutzkus Gubner Rozansky Seror Weber LLP, Woodland Hills, CA, for Anhing Corporation.

Ernest E. Price, Arnold E. Sklar, Ropers Majeski Kohn and Bentley, Los Angeles, CA, Amanda V. Dwight, Dwight Law Group, Irvine, CA, for Thuan Phong Company Limited, et al.

**Proceedings:** (IN CHAMBERS)

**ORDER RE: MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SANCTIONS [273, 274, 275, 277]**

BEVERLY REID O'CONNELL, United States District Judge

## I. INTRODUCTION

Pending before the Court are three separate motions.[1] (Dkt. Nos. 273, 274, 275, 277.) These motions follow the parties' second mandatory settlement conference, held on February 27, 2015, and the parties' previously-filed cross-motions for summary judgment, which the Court denied on October 24, 2014. In preparation for trial, the Court held a hearing on the parties' motions in limine and disputed jury instructions. At the hearing, the Court granted Plaintiff Anhing Corporation ("Plaintiff") leave to file a motion for summary adjudication as to the issue of fraud. (Dkt. No. 270.) The Court then granted Defendant Thuan Phong Company Limited ("Defendant") leave to file a motion for judgment as a matter of law or a motion for summary adjudication as to Plaintiff's claim for trade dress infringement. (Dkt.

---

1. Docket Numbers 274 and 277 both relate to Defendant's Motion for Partial Summary Judgment.

No. 272.) Pursuant to these orders, Plaintiff has filed a Motion for Partial Summary Judgment on the defense and counterclaim of fraud and a Motion for Sanctions, (Dkt. Nos. 273, 275), and Defendant has filed a Motion for Partial Summary Judgment on the claim of trade dress infringement, (Dkt. No. 274). The Court held a hearing on the motions on April 13, 2015. After considering the parties' papers and the arguments of counsel advanced at the hearing, the Court finds that no triable issue exists with respect to the issue of fraud, but that triable issues remain on Plaintiff's trade dress infringement claim. The Court also finds that sanctions are not appropriate under the circumstances. Plaintiff's Motion for Partial Summary Judgment is therefore **GRANTED**, and Defendant's Motion for Partial Summary Judgment is **DENIED**. Plaintiff's Motion for Sanctions is also **DENIED.**

## II. BACKGROUND

### A. General Factual Background

Plaintiff Anhing Corporation manufactures and distributes a wide variety of foods, oils, seasonings, and spices in the Asian foods market in the United States. (Statement of Uncontroverted Facts in Supp. of Pl.'s Mot. for Partial Summ. J. ("Pl.'s SUF") ¶ 1.) Since 1980, Plaintiff has sold rice noodles under the mark "MY–THO." (Pl.'s SUF ¶ 4.) These rice noodles are the subject of this lawsuit. Plaintiff registered the "MY–THO" mark with the United States Patent and Trademark Office ("USPTO") as federal trademark Registration Number 1,393,449. (Pl.'s SUF ¶ 5.)

Mr. Pham Van Tu founded Defendant Thuan Phong Limited in 2002 in the city of Mỹ Tho, Vietnam. (Dkt. No. 155 at 2.) Defendant specializes in the production of rice paper, rice noodles, and vermicelli. (*Id.*) In 2002, Defendant began using the mark and design, "TUFOCO BAMBOO TREE." (*Id.*) On November 4, 2008, Defendant obtained registration for the mark and design "BÁNH TRÁNG MỸ THO TUFOCO DAC BIET DE LAM GOI CUON VA CHA GIO VIET NAM BAMBOO TREE HIEU BA CAY TRE VIETNAMESE RICE PAPER," Registration Number 3,526,431. (*Id.*) Defendant began using the term "BÁNH TRÁNG MỸ THO" contained in the mark of Registration Number 3,526,431 to inform customers of the geographic origin of its rice paper products. (*Id.*) "BÁNH TRÁNG MỸ THO" translates to "rice paper from Mỹ Tho." (*Id.*) According to Defendant, Mỹ Tho, Vietnam is the center of rice paper production, and "HU TIEU MỸ THO" is a collective mark in Vietnam under Vietnam Trademark Registration Number 116,254. (*Id.*)

### B. Facts Relevant to the Issue of Fraud and Plaintiff's Motion for Partial Summary Judgment

From the start of this litigation, Defendant has asserted a defense and counterclaim of fraud. (*See* Answer ¶ 14; Counterclaims ¶¶ 5–21.) Defendant maintains that Plaintiff procured the "MY–THO" mark by making fraudulent misrepresentations to the USPTO and seeks cancellation of the mark. The facts relevant to Plaintiff's trademark application and registration are set forth below.[2]

---

**2.** In opposing Plaintiff's partial summary judgment motion. Defendant disputes certain facts in the Statement of Uncontroverted Facts. Aside from merely indicating that the facts are in dispute, however, Defendant fails to offer any contradictoiy or additional evidence rendering an actual factual dispute. Instead, Defendant offers legal arguments, such as "Mr. Ly was not candid, omitted material information and failed to disclose the geographical significance of the mark." (*See, e.g.,* Pl.'s SUF ¶¶ 9–17, 19–25, 27–29.) To the

Plaintiff has sold rice noodles under the "MY–THO" mark since October 1980. (Pl.'s SUF ¶ 3.) Plaintiff first applied to register the "MY–THO" mark with the USPTO on February 15, 1985. (Pl.'s SUF ¶ 6.) In the original application, Plaintiff indicated that the words "my" and "tho" are Vietnamese words meaning "beauty" and "longevity," respectively.[3] (*See* File Wrapper at 8.)

On April 30, 1985, the USPTO issued an Office Action in which it refused to register the mark based upon a likelihood of confusion with a prior third party mark. (Pl.'s SUF ¶ 7; *see also* File Wrapper at 14–15.) The Office Action stated the following:

> If you choose to respond to my refusal to register this mark, you must also address the following informalities.
>
> You must submit an English translation of the foreign wording on the specimens.
>
> It is improper to use the federal registration symbol in connection with marks which are not actually registered with the United States Patent and Trademark Office. Even though an application is pending, the registration symbol may not be used before the mark has actually become registered. The registration symbol may only be used with the mark in relation to the specific goods (and/or services) recited in the registration.
>
> The specimens indicate that the goods are manufactured or produced in a foreign country. Only the owner of a mark may register the mark. Is the mark used anywhere by the foreign manufacturer or producer as the owner of the mark?
>
> An application is pending for the registration of a mark which so resembles the mark in this application as to be likely, as used in connection with the goods (and/or services), to cause confusion, or to cause mistake, or to deceive. Since the filing date of this application is subsequent to the filing date of the other pending application, the latter, if and when it matures into a registration, will be cited against this application.

(File Wrapper at 14–15 (internal citations omitted).)

Plaintiff filed a response to the Office Action on October 18, 1985. (Pl.'s SUF ¶ 8; *see also* File Wrapper at 18–31.) The response sought to amend Plaintiff's initial trademark application to clarify that Plaintiff had maintained substantially exclusive and continuous use of the "MY–THO" mark in commerce for the five years preceding the registration application. (File Wrapper at 19.) To that end, Plaintiff attached four third-party declarations attesting to the quality and popularity of Plaintiff's rice noodles, as well as Plaintiff's exclusive use of the "MY–THO" mark. (*Id.* at 24–27.) The response also addressed the examiner's concerns regarding a potential likelihood of confusion with the mark that was the subject of a prior application. (*Id.* at 2–5.)

Mr. Henry Ly ("Mr. Ly"), Plaintiff's founder and president, filed a declaration in support of the amendment and response. (*Id.* at 28–31.) In addition to addressing the likelihood of confusion issue.

---

extent Defendant "disputes" facts without actually controverting them by a declaration or other evidence, the Court considers these facts to be undisputed. *See* CD. Cal. L.R. 56–3.

**3.** A copy of the file wrapper for Plaintiff's "MY–THO" mark is attached to the Declaration of Jeffrey A. Kobulnik filed hi Support of Plaintiff's Motion for Partial Summary Judgment. (*See* Dkt. No, 275–2, Ex. A.) Because the file wrapper does not contain internal page numbers, all pin citations to the document will refer to the page numbers as reflected on CM/ECF.

Mr. Ly's declaration also directly responded to the informalities identified in the Office Action. In response to the examiner's request for an English translation of the foreign wording on the specimens,[4] Mr. Ly stated that "MY–THO" has a double meaning in the Vietnamese language of "pretty autumn" and "beauty and longevity." (*Id.* at 29.) Mr. Ly also indicated that Plaintiff had selected the "MY–THO" mark "because we felt it was original, distinctive, had not been used by anyone else and yet suggested to the purchaser in an indirect and fanciful way that our rice food was a very fine product," especially in light of the phrase's double meaning. (*Id.*) In response to the examiner's inquiry as to whether any foreign manufacturers or producers use the mark as its owner, Mr. Ly declared the following: "The mark MY–THO is used by the foreign packager of our products only for our products." (*Id.* at 30.)[5]

A few months later, on February 18, 1986, the USPTO issued a Notice of Publication indicating that the "MY–THO" mark "appears to be entitled to registration." (*Id.* at 32.) The USPTO then registered the mark on May 13, 1986. (*Id.* at 33.) The "MY–THO" mark has appeared on the principal register since.

Throughout this litigation. Defendant has maintained that Mr. Ly's failure to inform the USPTO that Mỹ Tho is a city in Vietnam amounts to fraud. Defendant has now produced the file wrapper for the "MY–THO" mark. Defendant has also submitted the file wrapper for Plaintiff's "CHAUDOC" mark and the registration for Plaintiff's "SONGHUONG" mark.[6] (*See* Decl. of Ernest Price in Opp'n to Pl.'s Mot. for Summ. J. ("Price Opp'n Decl.") Exs. 4–5.) Additionally, Defendant has resubmitted evidence previously submitted in connection with a prior motion for summary judgment. These documents include four third party affidavits indicating that Mỹ Tho is a well-known city in Vietnam and famous for certain rice products and dishes; a document from Vietnam's National Office of Intellectual Property denoting the history and fame of Mỹ Tho city; and a document issued by the Vietnamese government denying Plaintiff's application to register the "MY–THO" mark in Vietnam. (*Id.* Exs. 1–3.) Finally, Defendant has offered, for the first time, the declaration of Mr. Pham Van Tinh.[7]

To counter Defendant's assertion of fraud, Plaintiff has offered a declaration from Mr. Ly. Mr. Ly came to the United States as a refugee from Vietnam in 1975. (Decl. of Henry Ly in Supp. of Pl.'s Mot. for Partial Summ. J. ("Ly Decl.") ¶ 4.) Mr. Ly states that Mỹ Tho was not known for the large scale production or manufacture of rice noodles or rice paper when he left the country, and that when Plaintiff applied for the "MY–THO" mark, he was not aware of any significance of the terms "Mỹ Tho" or "Mỹ–Tho" in connection with rice noodles, whether made in Vietnam or elsewhere. (*Id.* ¶¶ 12–13.) The declaration also verifies that at the time Plaintiff applied for the mark, all of Plaintiff's "MY–THO"

---

**4.** The specimens submitted in support of Plaintiff's original application indicate that Plaintiff used the "MY–THO" mark by way of the Vietnamese phrase, "BÁNH PHO MỸ–THO." (*Id.* at 12.)

**5.** In response to the examiner's concerns regarding Plaintiff's use of the ® symbol on the rice noodle's packaging, Plaintiff clarified that the symbol denotes its ownership of separate trademarks for the "A" and red boat junk ship which also appear on the product packaging and specimen. (*Id.* at 23.)

**6.** These marks are not related to the instant lawsuit.

**7.** As discussed below, *see infra* Part III.A.2.b, this declaration is inadmissible.

branded products, including its rice noodles, were manufactured in Thailand, as indicated on its product packaging and the specimens submitted to the USPTO. (*Id.* ¶ 14.)

### C. Facts Relevant to Plaintiff's Trade Dress Infringement Claim and Defendant's Motion for Partial Summary Judgment

Defendant's Motion for Partial Summary Judgment is based upon the Court's previous order denying Plaintiff's motion for reconsideration. Plaintiff's motion requested that the Court reconsider its denial of summary judgment on Plaintiff's claim for trademark infringement. (*See* Dkt. No. 174 at 5.) Plaintiff asserted that the Court violated the "anti-dissection" rule and erred in denying summary judgment by considering the parties' trade dress as part of their marks rather than considering the marks in isolation. (*See* Dkt. No. 186 at 6.)

In refusing to reconsider the summary judgment order, the Court concluded that it did not err in evaluating Plaintiff's trademark infringement claim or assessing the likelihood of confusion between the parties' marks because the elements it considered were in fact part of Defendant's

mark.[8] (*Id.*) The Court then clarified that although the summary judgment order had considered Plaintiff's trademark infringement and trade dress claims simultaneously,

> [A]n independent analysis of each does not alter the Court's decision. That is, the Court finds that the product packaging of the two products is distinct enough to prevent confusion between the parties' *trade dress*, and the inclusion of additional terms in Defendant's mark (and the lack of prominence of the phrase 'MỸ THO' in that mark) is enough to create a triable issue of fact regarding the likelihood of confusion between the two parties *marks*."

(*Id.* at 7.) Defendant seeks summary adjudication on Plaintiff's trade dress claim in its favor based upon these statements. Defendant has not submitted any evidence of the parties' trade dress in connection with its motion.

### D. The Second Mandatory Settlement Conference and Plaintiff's Request for Sanctions

Plaintiff's Motion for Sanctions is based upon the second mandatory settlement conference conducted on February 27, 2015. The parties initially participated in

---

8. As the Court made clear in its order denying reconsideration,

 > [T]he terms TUFOCO BAMBOO TREE are part of Defendant's mark. As discussed above. Defendant obtained registration for the mark and design "BÁNH TRÁNG MỸ THO TUFOCO DAC BIET DE LAM GOI CUON VA CHA GIO VIET NAM BAMBOO TREE HIEU BA CAY TRE VIETNAMESE RICE PAPER," Registration No. 3,526,431. (Dkt. No. 21–1 at 3.) Defendant began using the terms "BÁNH TRÁNG MỸ THO" contained in its registered mark to inform customers of the geographic origin of its rice paper products, (Dkt. No. 21–1 at 3), and Defendant has also filed applications with the USPTO to trademark the mark "BÁNH PHO MỸ THO, TUFOCO, RICE NOODLE,

 BAMBOO TREE, ffIEU BA CAY TRE" and design, as well as the mark "HU TLEU MỸ THO, TUFOCO, RICE NOODLE, BAMBOO TREE, HIEU BA CAY TRE." (Dkt. No. 21–1 at 4.) While the anti-dissection rule does not compel the Court to consider the trade dress of the two marks, it does require a comparison of each mark as a whole, and Defendant's mark contains much more than the phrase "MỸ THO." *See E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992); 4 McCarthy on Trademarks and Unfair Competition § 23:44 (4th ed. 2014) ("the basic rule is that marks must be compared in their entireties and not dissected").

 (Dkt. No. 186 at 6.)

settlement negotiations before Magistrate Judge Nagle on March 31, 2014 but failed to reach an agreement. (Dkt. No. 56.) On January 8, 2015, the Court ordered the parties to appear at a second mandatory settlement conference before Magistrate Judge Gandhi. (Dkt. No. 200.) The order required that both sides present a person with full settlement authority at the conference. (*Id.* at 2.) The order then defined a person with full settlement authority by stating the following:

> A person with full settlement authority is a person who retains power to change a settlement position by the events of the day and without consulting a superior. This requirement contemplates the physical presence of each party or, if a corporate or governmental entity, of an authorized and knowledgeable representative of the entity. If a proposed settlement must be presented for approval to a board, committee or other decision-making body, the person whose recommendation is normally followed must be the person present at the settlement conference. It is essential that everyone whose decision is necessary for settlement personally attend and participate in the settlement conference.

(*Id.*) The order also provided that counsel appearing without their clients may be subject to sanctions, and that "[t]he non-complying party, attorney, or both, may be assessed the costs and expenses incurred by other parties as a result of a cancellation and rescheduling." (*Id.*)

Plaintiff maintains that Defendant failed to produce a person with full settlement authority on February 27, 2015. Two of Defendant's three principals, Mr. Tran and Mr. Van Nuoc, appeared at the settlement conference. (Decl. of Ernest Price in Opp'n to Pl.'s Mot. for Sanctions ("Price Sanctions Decl.") ¶ 2.) Defendant's third principal, Mr. Pham Van Tu, was not present.

(*Id.*) Mr. Pham Van Tu signed a power of attorney authorizing Mr. Tran "to participate in the proceedings as the representation of defendant" and stated that Mr. Tran "is authorized to act on behalf of the company and participate in the trial (trial and appellate), attend the mediation, ... and sign up records, documents and applications related to the settlement of the case." (*Id.* Ex. A.)

The settlement negotiations proceeded until 7:00 p.m. At that time. Judge Gandhi suggested a double-blind mediator's proposal. (*Id.* ¶ 4.) Mr. Tran and Mr. Van Nuoc requested additional time to consider the proposal, and Judge Gandhi suggested that the parties respond by 9:00 a.m. the following business day. (*Id.*) The parties did not reach an agreement by the deadline. (Decl. of Gordan Gray in Supp. of Pl.'s Mot. for Sanctions ("Gray Sanctions Decl.") ¶ 4.) To date, the parties have not reached a settlement.

### E. Procedural Background

The parties previously filed cross-motions for summary judgment, which the Court denied on October 24, 2014. (Dkt. No. 155.) In preparation for trial, Plaintiff filed a motion in limine to exclude all evidence and argument related to Plaintiff's alleged fraud on the USPTO. (Dkt. Nos. 167.) At the hearing on the matter, the Court concluded that Plaintiff's request was not properly brought as motion in limine and accordingly granted Plaintiff leave to file a motion for partial summary judgment on the issue. (Dkt. No. 270.) The Court then granted Defendant leave to file its own motion pursuant to Federal Rule of Civil Procedure 50 or 56 to address Plaintiff's trade dress infringement claim. (Dkt. No. 272.)

On March 16, 2015, the parties filed the instant Motions for Partial Summary

Judgment.[9] (Dkt. Nos. 274, 275, 277.) Plaintiff also filed a separate Motion for Sanctions related to Defendant's conduct at the settlement conference. (Dkt. No. 273.) Each party has filed timely oppositions, (see Dkt. Nos. 279, 280, 281), and replies, (see Dkt. Nos. 285, 290, 291).

## III. EVIDENTIARY OBJECTIONS

The parties have raised numerous evidentiary objections in connection with the pending motions. The Court first addresses Defendant's objections, which relate to Plaintiff's Motion for Partial Summary Judgment and Plaintiff's Motion for Sanctions. The Court then considers Plaintiff's objections, which relate to evidence submitted by Defendant in opposing Plaintiff's Motion for Partial Summary Judgment.

### A. Defendant's Objections

Defendant objects to various statements in Mr. Ly's declaration filed in support of Plaintiff's Motion for Partial Summary Judgment. Defendant also objects to statements in the declaration of Plaintiff's counsel, Mr. Gordon Gray, filed in support of Plaintiff's Motion for Sanctions.

#### 1. Mr. Ly's Declaration

Defendant objects to various statements in Mr. Ly's declaration on the grounds that the statements lack personal knowledge, are argumentative and incomplete, and amount to impermissible lay opinion testimony. (Dkt. No. 283.) Federal Rule of Evidence 602 requires that a witness's testimony be based upon personal knowledge. See Fed. R. Evid. 602. Rule 701 governs lay opinion testimony and requires that the testimony be rationally based on the witness's perception, helpful to understanding a fact in issue, and not based on scientific,

technical, or other specialized knowledge. See Fed. R. Evid. 701. Although an opinion is not objectionable "just because it embraces an ultimate issue," see Fed. R. Evid. 704(a), nevertheless, declarations filed in support of a motion for summary judgment "shall contain only factual, evidentiary matter," see C.D. Cal. L.R. 7–7 (requiring that declarations "shall conform as far as possible" to Federal Rule of Civil Procedure 56(c)(4), which requires that a declaration be based on personal knowledge and facts admissible as evidence).

■ Some of Mr. Ly's statements lack personal knowledge or otherwise fail to comply with the Central District's Local Rule 7–7 and Federal Rule of Evidence 56(c)(4). For example, Mr. Ly's statement that the "MY–THO" mark "has long been incontestable," (see Ly Decl. ¶ 5), goes beyond Mr. Ly's personal knowledge and beyond a factual matter. Similarly, Mr. Ly's statement that "Mỹ Tho was not known for the large scale manufacture or production of rice noodles or rice paper before 1975 when I left Vietnam," (see id. ¶ 12), goes beyond Mr. Ly's own personal knowledge, at least to the extent Mr. Ly purports to testify as to Mỹ Tho's general reputation and association with rice products and not his own knowledge or understanding of the same. To the extent Mr. Ly's declaration contains legal arguments or statements beyond his personal knowledge, Defendant's objections are **SUSTAINED.**

On the other hand, many of the objected to statements are admissible. For example, Mr. Ly's statement that "[a]t the time of Anhing's application, I had no knowledge ... of the term 'Mỹ–Tho' or

---

**9.** Docket Numbers 274 and 277 relate to Defendant's Motion for Partial Summary Judgment. Docket Number 274 contains Defendant's memorandum of points and au-

thorities, and Docket Number 277 contains Defendant's Statement of Uncontroverted Facts. Docket Number 275 contains Plaintiff's Motion for Partial Summary Judgment.

even 'Mỹ Tho' for rice noodles, whether made in Vietnam or elsewhere," (see id. ¶ 13), or "[i]t did not even occur to me at the time Anhing's trademark application was being prosecuted that there could be any reason to inform the USPTO of the existence of a city in Vietnam," (see id. ¶ 14), are wholly based on Mr. Ly's personal knowledge. That Defendant disputes these statements does not render them inadmissible. The Court will therefore consider these statements and others which are based on factual matters and Mr. Ly's personal knowledge and which do not contain legal arguments in ruling on Plaintiff's Motion for Partial Summary Judgment. Thus, to the extent Defendant objects to these statements. Defendant's objections are **OVERRULED**

### 2. Mr. Gray's Declaration

Defendant also objects to various statements in the declaration of Plaintiff's counsel, Mr. Gray, filed in support of Plaintiff's Motion for Sanctions. (Dkt. No. 283.) Defendant maintains that certain statements lack personal knowledge, are argumentative, call for speculation, and assume facts. These objections are boilerplate, and pursuant to the Court's Standing Order, (see Standing Order ¶ 8.c.iii), may be overruled and disregarded. Accordingly, the Court will not address these objections individually. To the extent Mr. Gray's statements are indeed inadmissible on the grounds asserted by Defendant, the Court will not consider them.

### B. Plaintiff's Objections

Plaintiff objects to several documents attached to the declaration of Defendant's counsel, Mr. Ernest Price, (see Dkt. No. 292), as well as various statements in Mr. Pham Van Tinh's declaration, (see Dkt. No. 293). Both of these declarations were filed in opposition to Plaintiff's partial summary judgment motion. (See Dkt. Nos. 280–1, 280–4.) The Court will consider the objections to each declaration separately.

### 1. Mr. Price's Declaration

Plaintiff renews its personal knowledge objections to the affidavits of four individuals filed in connection with the previous and pending motions for summary judgment. As the Court held in ruling on the cross-motions for summary judgment, the declarants "possess sufficient personal knowledge to testify as to their own opinions of Defendant's products, their own companies' sales, and their own awareness of certain dishes and their names." (See Dkt. No. 155 at 9.) But to the extent the declarants purport to testify to matters beyond their personal knowledge, such testimony is inadmissible and the Court will not consider it. Plaintiff's objections are therefore **OVERRULED as moot.**

■ Plaintiff also objects to Exhibit 2, which is a copy of a document from Vietnam's National Office of Intellectual Property. Defendant has offered this exhibit as evidence that Mỹ Tho city is well-known for noodles, rice noodles, vermicelli, and other rice food products and dishes. Plaintiff objects on hearsay and best evidence grounds. To the extent Exhibit 2 is offered for the truth of the matter asserted—that is, to show that Mỹ Tho is known for and associated with various rice food products and dishes—the exhibit is hearsay and inadmissible. See Fed. R. Evid. 801, 802. But to the extent Exhibit 2 is offered for a different purpose, such as circumstantial evidence of Mr. Ly's knowledge of Mỹ Tho city, the document is not hearsay and is admissible. Plaintiff's hearsay objection is therefore **SUSTAINED in part** and **OVERRULED in part** [10]

10. The basis for Plaintiff's best evidence objection is unclear, as Mr. Price has attached a

■ Finally, Plaintiff objects to Exhibit 5, which is a copy of the registration for Plaintiff's "SONGHUONG" mark obtained from the USPTO's website. Although this mark is not the subject of the instant dispute, Defendant has offered the registration to show that Plaintiff failed to disclose the mark's geographical significance and as circumstantial evidence of Plaintiff's purported "pattern or practice" of fraud on the USPTO. Plaintiff avers that the document is irrelevant, amounts to hearsay, and lacks foundation. Given that the standard for relevance is quite low, *see Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 587, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ("[Rule 402]'s basic standard of relevance ... is a liberal one."), Plaintiff's relevance objection is unfounded. Plaintiff's foundation objection also lacks merit, as Mr. Price's declaration is sufficient to demonstrate that the document is what Defendant purports it to be. *See* Fed. R. Evid. 901(a), (b)(1). Finally, Plaintiff's hearsay objection is well-taken to the extent the document is offered to prove the Vietnamese meaning and translation of the words "Song" and "Huong," but misplaced to the extent the document is offered as circumstantial evidence of Plaintiff's knowledge of Mỹ Tho city. Plaintiff's objections to Exhibit 5 are therefore **SUSTAINED in part** and **OVERRULED in part.**

### 2. Mr. Van Tinh's Declaration

■ Defendant has submitted the declaration of Mr. Pham Van Tính for the first time in opposing Plaintiff's Motion for Partial Summary Judgment. (*See* Dkt. No. 280–4.) Mr. Van Tinh's declaration opines as to the meaning of "MYO–THO," the insignificance of a hyphen between two words in altering the meaning of a phrase in Vietnamese, and Mỹ Tho city's general notoriety and reputation for rice noodle dishes. (*See* Decl. of Pham Van Tinh in Opp'n to Pl.'s Mot. for Partial Summ. J. ("Van Tinh Decl.") ¶¶ 6–10.) Plaintiff objects to the declaration in its entirety on the basis that Mr. Van Tinh was not disclosed during discovery and has offered an improper expert opinion without submitting a written report as required by Federal Rule of Civil Procedure 26(a)(2)(B). (*See* Dkt. No. 293.) Given these failures, Plaintiff seeks to exclude the declaration under Federal Rule of Civil Procedure 37.

Federal Rule of Civil Procedure 26(a)(2)(A) requires each party to disclose "the identity of any witness it may use at trial to present evidence" as an expert. Generally, this disclosure must also be accompanied by a written report. *See* Fed. R. Civ. P. 26(a)(2)(B). If the witness is not retained or specially employed to provide expert testimony, the witness need not submit a written report, but the witness must still be disclosed and must state the subject matter, facts, and opinions to which he or she will testify. *See* Fed. R. Civ. P. 26(a)(2)(C). Regardless of whether a written report is required, a party must make all required disclosures at least ninety days before the date set for trial. *See* Fed. R. Civ. P. 26(a)(2)(D).

■ If a party fails to identify a witness in accordance with Rule 26(a) or (e), "the party is not allowed to use that informa-

copy of Exhibit 2 to his declaration, and the evidence rules permit a party to submit a duplicate rather than an original so long as there are no genuine questions regarding the document's authenticity. *See* Fed. R. Evid. 1003. Mr. Price's declaration states that Exhibit 2 is a true and correct copy, (*see* Price

Opp'n Decl. ¶ 3), and the docmnent is accompanied by a certificate of authentication signed by Vietnam's Consular Officer, (*see id.* Ex. 2). Plaintiff has not attacked the authenticity of Exhibit 2. Plaintiff's best evidence objection is therefore **OVERRULED.**

tion or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *See* Fed. R. Civ. P. 37(c)(1). A district court has discretion and is given "particularly wide latitude" to exclude evidence under Rule 37(c). *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Indeed, the advisory committee notes to the rule describe the exclusionary sanction as "self-executing," "automatic," and intended to provide "a strong inducement for disclosure of material." *Id.* (internal quotation marks omitted) (quoting Fed. R. Civ. P. 37 advisory committee's note (1993)). Further, "the burden is on the party facing sanctions to prove harmlessness." *Id.* at 1107.

In this case, Mr. Van Tinh's declaration can only be characterized as an attempt to offer expert witness testimony. Plaintiff avers that Defendant did not disclose Mr. Van Tinh during discovery and failed to produce either a written report or other required disclosures at any time during discovery. And Defendant offers no explanation as to why it has only now identified Mr. Van Tinh as a witness, well past the close of discovery and only weeks before this matter's trial.

Although Mr. Van Tinh's declaration is clearly relevant to the issue of fraud, this alone does not save the evidence from exclusion. *See id.* at 1106 ("By excluding Vuckovich, the district court made it much more difficult, perhaps almost impossible, for Deckers to rebut Polzin's damages calculations."). Defendant must show that the failure to disclose Mr. Van Tinh was substantially justified or harmless to avoid exclusion. Defendant's papers are entirely devoid of any reason as to why Defendant failed to disclose Mr. Van Tinh earlier in the litigation. This case has been pending for nearly two years. Given the lack of explanation, the Court cannot find that Defendant's late designation is substantially justified, as this case is on the eve of trial.[11] Nor can the Court conclude that the failure to disclose was harmless. As Mr. Van Tinh resides in Vietnam, and as this case is scheduled for trial in approximately two weeks. Plaintiff will likely not be able to depose him before trial. Nor will Plaintiff be able to secure his presence at trial by subpoena to cross-examine him about his statements and opinions. Under the circumstances. Defendant has not met its burden of demonstrating harmlessness. *See id.* at 1107 (upholding district court's decision to exclude an expert report disclosed one month before trial); *see also Quevedo v. Trans–Pac. Shipping, Inc.*, 143 F.3d 1255, 1258 (9th Cir. 1998) (finding the district court did not abuse its discretion in excluding an expert report filed one-and-a-half months late). Accordingly, exclusion under Rule 37(c) is warranted, and Plaintiff's objections to Mr. Van Tinh's declaration are **SUSTAINED in full.** The Court will not consider the declaration in ruling on Plaintiff's Motion for Partial Summary Judgment.

## IV. LEGAL STANDARD

### A. Summary Judgment Under Federal Rule of Civil Procedure 56

Summary judgment is appropriate when, after adequate discovery, the evidence demonstrates that there is no genu-

---

11. Indeed, the Court has previously granted Plaintiff's Motion in Limine No. 8 to exclude the testimony of Lee Ginter, another witness Defendant intended to call to testify to the meaning of "MY–THO" but who Defendant failed to disclose until December 30, 2014. (*See* Dkt. No. 270.) For the same reasons Defendant failed to justify the late designation of Lee Ginter, Defendant has also failed to justify the even later designation of Mr. Van Tinh.

ine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A disputed fact is material where its resolution might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party. *Id.* The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may satisfy that burden by showing "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548.

Once the moving party has met its burden, the non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, the non-moving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Id.* at 587, 106 S.Ct. 1348. Only genuine disputes over facts that might affect the outcome of the lawsuit will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (holding that the non-moving party must present specific evidence from which a reasonable jury could return a verdict in its favor). A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

A court may consider the pleadings, discovery, and disclosure materials, as well as any affidavits on file. Fed. R. Civ. P. 56(c)(2). Where the moving party's version of events differs from the non-moving party's version, a court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

Although a court may rely on materials in the record that neither party cited, it need only consider cited materials. Fed. R. Civ. P. 56(c)(3). Therefore, a court may properly rely on the non-moving party to identify specifically the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

Finally, the evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson*, 477 U.S. at 253, 106 S.Ct. 2505.

**B. Sanctions Under 28 U.S.C. § 1927, the Court's Inherent Powers, and Local Rule 83–7**

Section 1927 prohibits attorneys from "unreasonably and vexatiously" multiplying the proceedings in a case. *See* 28 U.S.C. § 1927. The statute authorizes sanctions against noncomplying attorneys in the amount of "excess costs, expenses, and attorneys' fees reasonably incurred" because of the misconduct. *Id.*; *see also New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989). "Sanctions pursuant to section 1927 must be supported by a finding of subjective bad

faith." *New Alaska Dev.*, 869 F.2d at 1306 (citing *Estate of Blas ex rel Chargualaf v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986)). Bad faith may be present where an attorney acts with the intent to increase expense or to delay. *Id.*

In addition to the statutory authority to sanction an attorney's misconduct under § 1927, a district court has the inherent power to assess attorneys' fees "for the willful disobedience of a court order" or "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) (internal quotation marks omitted). "[R]ecklessness, without more, does not justify sanctions under a court's inherent power." *Fink v. Gomez*, 239 F.3d 989, 993–94 (9th Cir. 2001). Rather, a court must make a specific finding of bad faith or "conduct tantamount to bad faith," such as recklessness in connection with frivolousness, harassment, or an improper purpose. *Id.* at 994. Although a court may assess attorneys' fees "in a proper case," fees should not be imposed "lightly or without fair notice and an opportunity for a hearing on the record." *Roadway Express*, 447 U.S. at 767, 100 S.Ct. 2455. Moreover, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

The Central District's Local Rules also authorize sanctions under certain circumstances. Local Rule 83–7 empowers the Court to award costs and attorneys' fees to opposing counsel upon a finding that the offending party acted in bad faith. C.D. Cal. L.R. 83–7(b). If a district court exercises its discretion to impose sanctions, the court must state its reasons for doing so, "including the need for the particular sanctions imposed." *Couveau v.*

*Am. Airlines, Inc.*, 218 F.3d 1078, 1081 (9th Cir. 2000).

## V. DISCUSSION

### A. Plaintiff's Motion for Partial Summary Judgment on the Issue of Fraud

Defendant has pleaded fraud as an affirmative defense and counterclaim to Plaintiff's trademark infringement claim. (*See* Answer ¶ 14; Counterclaims ¶¶ 5–21.). A trademark may be cancelled upon a finding that it was obtained by fraud on the USPTO. *See* 15 U.S.C. § 1064(3). Upon cancellation, the owner "is no longer entitled to the rights that flow from federal registration, including the presumption that the mark is valid." *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1097 (9th Cir. 2013).

Fraud in procuring or renewing a trademark "occurs when an applicant knowingly makes false, material representations of fact in connection with [the] application." *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 48 (Fed. Cir. 1986). Thus, to prevail on its claim that Plaintiff committed fraud on the USPTO in procuring the "MY–THO" mark, Defendant must prove all of the following: (1) Plaintiff made a false representation regarding a material fact; (2) Plaintiff knew or believed that the representation was false; (3) Plaintiff intended to induce the USPTO's action or restraint from action in reliance on the misrepresentation; (4) the USPTO reasonably relied on the misrepresentation; and (5) damages proximately resulted from the reliance. *See San Juan Prods., Inc. v. San Juan Pools of Kan., Inc.*, 849 F.2d 468, 473 (10th Cir. 1988); *see also* 6 McCarthy on Trademarks and Unfair Competition § 31:61 (4th ed.) (hereinafter "6 McCarthy").

An averment of fraud "remains 'a serious charge which is not easily proven.'" *San Juan Prods.*, 849 F.2d at 472 (quoting 2 McCarthy on Trademarks and Unfair Competition § 31.21). An applicant's verified statement requires only that the applicant specify that "to the best of the verifier's *knowledge and belief*, the facts recited in the application are accurate." *See* 15 U.S.C. § 1051(a)(3)(B) (emphasis added). Accordingly, proof of the applicant's knowledge of falsity and actual intent to deceive are essential elements of a fraud claim which cannot be satisfied by a "should have known" standard of negligence or even gross negligence. *See* 6 McCarthy, § 31.61; *see also In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) (noting that there is a material difference between a "false" representation and a "fraudulent" one and clarifying that "deception must be willful," not simply "occasioned by a misunderstanding, an inadvertence, [or] a mere negligent omission" to constitute fraud); *Bart Schwartz Int'l Textiles, Ltd. v. F.T.C.*, 289 F.2d 665, 669 (C.C.P.A. 1961) ("The obligation which the Lanham Act imposes on an applicant is that he will not make knowingly inaccurate or knowingly misleading statements in the verified declaration.").

■■■ A party alleging fraud "bears a heavy burden of proof." *In re Bose*, 580 F.3d at 1243. Fraud must be "proven 'to the hilt' with clear and convincing evidence," and "any doubt must be resolved against the charging party." *Id.* (quoting *Smith Int'l, Inc. v. Olin Corp.*, 209 U.S.P.Q. 1033, 1044 (T.T.A.B. 1981)). Because direct proof of an applicant's intent to deceive is rare, "intent can be inferred from indirect and circumstantial evidence." *Id.* at 1245. Nevertheless, indirect or circumstantial evidence must still meet the "clear and convincing" standard, requiring that the applicant's conduct, when viewed

in light of all the evidence, "indicate sufficient culpability to *require* a finding of intent to deceive." *Id.* (emphasis added) (internal quotation marks omitted).

Plaintiff seeks partial summary judgment on Defendant's fraud charge on the basis that the evidence does not support a finding that Plaintiff made any material misrepresentations to the USPTO with the requisite knowledge or intent to deceive. (Pl.'s Mot. for Partial Summ. J. at 13–17.) Plaintiff also argues that even if the evidence could support a knowing, intentional, and material misrepresentation, Defendant still could not prevail on a claim of fraud because it is undisputed that the USPTO initially denied Plaintiff's application based upon a potential likelihood of confusion, not a concern that the "MY–THO" mark was geographically descriptive. (*Id.* at 18–20). As discussed in further detail below, the Court finds that Defendant has failed to raise a triable issue as to whether Plaintiff knowingly deceived the USPTO.

### 1. Whether the Evidence Supports a Finding that Plaintiff Made a False Representation to the USPTO

■■■ To demonstrate fraud, Defendant must first proffer evidence that Plaintiff made a false statement to the USPTO in connection with the "MY–THO" mark. To the extent Defendant argues that Plaintiff made a false representation in connection with the initial application, the only evidence to support this theory of falsity is the file wrapper, which includes a copy of the registration application. In the application, Plaintiff stated that "[t]he words 'my' and 'tho' are Vietnamese words which mean 'beauty' and 'longevity,' respectively." (*See* File Wrapper at 8.) In connection with this litigation, Mr. Ly has declared under penalty of perjury that in Vietnamese, the term "my" means beauty and the term "tho" means longevity. (*See* Dkt. No. 25–2 at ¶ 5.) Defendant has not offered any

admissible evidence to suggest that these translations or representations are false.[12] Accordingly, Defendant has failed to raise a triable issue as to whether Plaintiff made a false statement or committed fraud in its application to register the "MY–THO" mark.[13]

Defendant's main theory of falsity centers on Plaintiff's response to the Office Action and Mr. Ly's supporting declaration. Again, the file wrapper remains the primary evidence on which this theory of falsity relies. As set forth above, the USPTO first refused Plaintiff's registration application based upon a potential likelihood of confusion with a mark pending under a prior application. (File Wrapper at 14–15.) The examiner also identified certain informalities for Plaintiff to address if it chose to respond to the Office Action. (*Id.*)

Plaintiff's response primarily addressed the examiner's concerns regarding a potential likelihood of confusion. The only representation to which Defendant takes aim is the statement that "MY–THO has a dual meaning in the Vietnamese language, namely 'beauty' and 'longevity' and 'pretty autumn.'" (*Id.* at 21.) Defendant similarly challenges Mr. Ly's supporting declaration, in which he stated that "MY–THO has the double meaning in the Vietnamese language of 'pretty autumn' and 'beauty and longevity.'" According to Defendant, Plaintiff and Mr. Ly's failure to inform the USPTO that Mỹ Tho is also a city in Vietnam amounts to a material and false omission.

Viewed in isolation. Plaintiff's response to the Office Action and Mr. Ly's supporting declaration does not demonstrate a false representation or support Defendant's fraud charge. The examiner requested an English translation of the foreign wording on the specimens. (*Id.* at 14.) The examiner did not ask whether the phrase "my tho" has any geographical significance. Accordingly, Plaintiff and Mr. Ly's translation of the phrase "my tho" to mean "beauty and longevity" and "pretty autumn" was entirely responsive. And while Plaintiff has offered evidence that the translation was also accurate, (*see* Ly Decl. ¶¶ 8–9), Defendant has failed to adduce any admissible evidence to the contrary or to otherwise call into question Mr. Ly's translation.

The Court recognizes that the specimens submitted in connection with Plaintiff's registration application bear the phrase "Banh Pho Mỹ–Tho," which is included on some of Plaintiff's packaging. (*See* File Wrapper at 12.) To the extent Defendant relies on this phrase, which makes use of a tilde even though Plaintiff's "MY–THO" mark does not, to demonstrate a false representation or omission, the Court is not persuaded. Even without considering any evidence, it is clear that "Mỹ–Tho" is not the same as "Mỹ Tho." Further, Plaintiff has offered evidence that the phrase "Banh Pho Mỹ–Tho" does not mean "rice noodles from Mỹ Tho" because the phrase does not include a preposition. (Dkt. No. 268–1 at ¶ 6.) Defendant has not offered any admissible evidence to dispute this translation. Accordingly, the specimens do not support Defendant's theory that Plaintiff made a false representation or omission by failing to inform the USPTO that "Mỹ Tho" has geographical significance.

---

12. The only evidence Defendant has offered to dispute Mr. Ly's translation of the words "my" and "tho" is the declaration of Mr. Van Tinh. As discussed above, this declaration is inadmissible under Rule 37(c) and cannot be used to create a triable issue of fact.

13. To the extent Defendant argues Plaintiff made a false representation by failing to initially disclose that "my tho" also means "pretty autumn," this argument fails because Plaintiff collected the omission in its response to the Office Action.

*See Bart Schwartz Int'l,* 289 F.2d at 669 (finding that "[t]he mere withholding of information as to the Italian word for 'fioc-co' [was] not such a fraudulent withholding as to warrant cancellation" of the Plaintiff's "FIOCCO" mark).

The Court therefore concludes that the file wrapper does not, by itself, demonstrate that Plaintiff made a false representation to the USPTO in procuring the "MY–THO" mark. This conclusion, however, does not end the Court's inquiry. In addition to the file wrapper, Defendant has also offered evidence that Mỹ Tho is a well-known city in Vietnam and that it is also known for its rice noodle dishes. Based on this evidence, Defendant maintains that a triable issue exists as to whether Plaintiff's failure to inform the USPTO about the existence of Mỹ Tho city demonstrates a false omission.

First, Defendant has offered the declarations of four individuals, at least three of whom are Vietnamese immigrants like Mr. Ly, and all of whom attest that Mỹ Tho is a large city long known for its rice noodle products and dishes. (*See* Price Opp'n Decl. Ex. 1.) Second, Defendant offers a document issued by the National Office of Intellectual Property of Vietnam, which states that Mỹ Tho has been a "trading center" since its founding in 1679 and which also indicates that the city is "a well-known place" for rice noodles and dishes. (*Id.* Ex. 2.) Third, Defendant offers evidence that the Vietnamese government denied Plaintiff's application to register the "MY–THO" mark. (*Id.* Ex. 3.) Finally, Defendant directs the Court to evidence that Plaintiff has failed to disclose the potential geographical significance of other marks in applications submitted to the USPTO. (*Id.* Exs. 4, 5.)

This evidence does not unequivocally demonstrate falsity by omission and fails to satisfy the requisite "clear and convinc-ing" evidentiary standard. As is clear from the file wrapper, the USPTO asked Plaintiff for an English translation of the "MY–THO" mark; the USPTO did not ask whether the phrase has any geographical significance. And as discussed above. Plaintiff's translation was responsive, complete, and accurate. Thus, a finding of falsity would require the Court to conclude that Mỹ Tho's notoriety and reputation for rice noodle dishes required Plaintiff to apprise the USPTO that a different spelling of its mark would reference a city in Vietnam. A finding of falsity would also require the Court to conclude that the USPTO's request *for an English translation* required as much. Because Defendant's evidence does not clearly suggest that the failure to disclose Mỹ Tho city amounts to a false omission, the Court finds that Defendant has failed to raise a triable issue with respect to falsity. But even assuming evidence extrinsic to the file wrapper could clearly and convincingly demonstrate a material omission, the evidence is insufficient to demonstrate Plaintiff's knowledge of the falsity or intent to deceive. The Court will address these elements in further detail below.

**2. The Evidence Does Not Support a Finding that Plaintiff Knew the Representation Was False or Intended to Deceive the USPTO**

▆▆▆▆ In addition to falsity, a finding of fraud requires the knowledge or belief that the representation was false, as well as the intent to deceive. Indeed, "[t]here is no fraud if a false misrepresentation is occasioned by an honest misunderstanding or inadvertence without a willful intent to deceive." *In re Bose,* 580 F.3d at 1246 (citing *Smith Int'l,* 209 U.S.P.Q. at 1043). In this case, there is no direct evidence of either. Mr. Ly has declared that in applying for the "MY–THO" mark and responding to the Office Action, he translated the

foreign wording on the specimens truthfully and did not intend to mislead the USPTO in any way. (Ly Decl. ¶¶ 7–8.) Accordingly, Defendant bears the burden of pointing to indirect or circumstantial evidence that clearly and convincingly supports an inference of deceptive intent. *In re Bose*, 580 F.3d at 1245, 1246.

Defendant maintains that the evidence extrinsic to the file wrapper indicating Mỹ Tho is a famous city well-known for its rice noodle dishes is sufficient to raise an inference of deceptive intent and create a triable issue of fact for trial. The Court must look to all of the evidence and determine whether, on the whole, it indicates "sufficient culpability to require a finding of intent to deceive." *Id.* at 1245. Accordingly, the Court must also consider Plaintiff's evidence rebutting an inference of fraudulent intent. To that end, Plaintiff has offered evidence that Mr. Ly did not know or believe Mỹ Tho to be associated with rice noodle products or dishes when he left Vietnam and immigrated to the United States. (Ly Decl. ¶ 12–13.) Plaintiff has also offered evidence that its products, including its rice noodles, were manufactured in Thailand, and that Mr. Ly did not believe there was any reason to inform the USPTO about the existence of a city in Vietnam given that the city is spelled differently than Plaintiff's mark and its rendering on the specimens, and given that Plaintiff's products were not manufactured or produced in Vietnam. (*Id.* ¶ 114.)

The Federal Circuit's teachings in *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357 (Fed. Cir. 2008), are instructive.[14] There, the court made clear that in cases like this one involving an

alleged nondisclosure of material information, "clear and convincing evidence must show that the applicant *made a deliberate decision* to withhold a *known* material reference." *Id.* at 1366 (citing *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed. Cir. 1995)). In other words, there must be strong evidence that the applicant withheld the information "with the specific intent to deceive" the USPTO. *Id.* Where an accused infringer relies on circumstantial evidence to raise an inference of deceptive intent, as Defendant does here, it is not enough that the inference be reasonable and based upon sufficient evidence. *Id.* Rather, the inference must be "the single most reasonable inference able to be drawn" from all the evidence. *Id.* at 1366–67 (citing *Scanner Techs. Corp. v. ICOS Vision Sys. Corp.*, 528 F.3d 1365, 1376 (Fed. Cir. 2008) ("Whenever evidence proffered to show either materiality or intent is susceptible of multiple reasonable inferences, a district court clearly errs in overlooking one inference in favor of another equally reasonable inference.")).

After reviewing the evidence submitted by both parties, the Court cannot conclude that Defendant has satisfied its heavy evidentiary burden. In light of all the evidence, one reasonable inference is that Plaintiff did not know about Mỹ Tho city or its association with rice noodles. Another reasonable inference is that Plaintiff knew of the city but did not believe it needed to disclose its existence to the USPTO, given that the "MY–THO" mark is spelled differently. Plaintiff's products are not produced in Mỹ Tho, and the USPTO initially denied registration due to a

---

14. The Court is mindful that *Star Scientific* involved a patent dispute. Nevertheless, its statements regarding deceptive intent are relevant and helpful, as the Federal Circuit expressly recognized in *In re Bose* that the strict standard for finding intent to deceive in patent cases "applies with equal force to trademark fraud cases." 580 F.3d at 1244–45. Indeed, the *In re Bose* court cited to *Star Scientific* in emphasizing that circumstantial evidence of deceptive intent must be clear and convincing. *Id.* at 1245.

possible likelihood of confusion and not because of the mark's potential descriptiveness. Although Defendant maintains that Plaintiff has not produced evidence to support or verify Mr. Ly's statements, this argument is unpersuasive, as it is *Defendant's* burden to produce clear and convincing evidence of fraud. This case has been pending since July 2013. That Defendant failed to come forth with any such evidence at any time earlier in the litigation and in accordance with the discovery rules does not justify preserving the issue for trial.

Defendant would have the Court disregard the evidence directly supporting the above-stated inferences, make an improper credibility determination at the summary judgment stage, and assume that Plaintiff must have known it needed to disclose the existence of Mỹ Tho city, and must have deliberately chosen not to do so with the specific intent to deceive the USPTO. But it is not clear to the Court that these are reasonable inferences. For example, that four individuals who immigrated from Vietnam around the same time as Mr. Ly knew of Mỹ Tho city and its association with rice noodle dishes does not necessarily suggest Mr. Ly had the same knowledge. Additionally, that Vietnam denied Plaintiff's application to register the "MY–THO" mark is not evidence of Plaintiff's knowledge or intent in seeking registration in the United States.

Perhaps the most suggestive evidence regards Plaintiff's "CHAUDOC" mark. In applying for the mark, Plaintiff stated that the phrase is Vietnamese and means "little boat" and "lonely." (*See* Price Opp'n Decl. Ex. 4.) Given that Châu Doc is a city in Vietnam, Defendant avers that Plaintiff has a "routine practice" of failing to disclose the geographical significance of its marks. The evidence regarding the "CHAUDOC" mark, however, does not raise a clear and convincing inference of deceptive intent in this case. In seeking registration for the mark, Plaintiff indicated that "to the best of its knowledge," it was unaware of any geographic significance for the term "chaudoc." (*Id.*) Defendant offers no evidence that this representation was false or made with the intent to deceive. It is entirely plausible that Mr. Ly had never heard of Châu Doc city. It is also possible that, even knowing of the city, Mr. Ly did not believe "CHAUDOC" to be suggestive of or refer to a city with a different spelling. Defendant merely surmises that Plaintiff must have known about Châu Doc city, known that the "CHAUDOC" mark could be associated with the city, and deliberately failed to apprise the USPTO about the city's existence in an effort to deceive. But absent any evidence that Plaintiff or Mr. Ly actually knew about Châu Doc city, Plaintiff's statements in procuring the "CHAUDOC" mark alone do not support these inferences.

The cases relied on by Defendant to suggest that a deliberate omission may be treated as a false statement and demonstrate deceptive intent are unpersuasive. In *Swiss Watch International, Inc. v. Federation of the Swiss Watch Industry*, 101 U.S.P.Q.2d 1731 (T.T.A.B. 2012), the appeal board indicated that "making a statement that, while true, gives only part of the story" may demonstrate falsity and intent. The board concluded that such was "clearly not the case here," however, because the mere argument that the applicant must have submitted documents with the intent to deceive "is not a substitute for showing that submitting both documents gave an incomplete picture and, in effect, resulted in the withholding of necessary information." *Id.* Similarly, in this case, Defendant relies on the argument that Plaintiff must have known about My

Tho city without offering evidence demonstrating as much.

*Caymus Vineyards v. Caymus Medical, Inc.*, 2013 WL 6665451 (T.T.A.B. July 12, 2013), is also distinguishable from the present case. *Caymus* considered the sufficiency of the pleadings and involved a significant factual distinction from this case, as the examiner specifically asked whether the "CAYMUS" mark had any geographical significance. *Id.* at *3. It is undisputed that the attorney examining Plaintiff's "MY–THO" mark did not ask Plaintiff the same.

Finally, *Daesang Corp. v. Rhee Bros., Inc.*, 2005 WL 1163142, at *9 (D. Md. May 13, 2005), is also factually distinguishable because in that case, it was "clear from the evidence" that a particular Korean city "is, and has been for centuries, famous for its high quality gochujang among Korean consumers, and that [the defendant] knew this at all relevant times." The evidence also clearly demonstrated that the defendant "had knowledge of [the city's] fame for high quality gochujang." *Id.* In contrast, here Defendant has failed to adduce evidence that Plaintiff actually knew of Mỹ Tho city or its association with rice noodles.

In sum. Defendant's theory of deceptive intent rests on circumstantial evidence capable of multiple inferences. Some of the inferences are consistent with mere negligence, such as the inference that Mr. Ly, as an immigrant born in Vietnam, should have known about Mỹ Tho city and should have known to disclose the city's existence to the USPTO. As Defendant maintains, some of the inferences could suggest fraud. But even assuming the combined inferences of fraud are reasonable,[15] they are clearly not "the single most reasonable" conclusion to be drawn in light of all the evidence in this case. *See Star Scientific*, 537 F.3d at 1366–67. As a result. Defendant has failed to carry its burden of raising a triable issue with respect to Plaintiff's knowledge or intent to deceive, and Plaintiff is entitled to summary adjudication on the issue of fraud.[16] Plaintiff's Motion for Partial Summary Judgment is therefore **GRANTED.**

## B. Defendant's Motion for Partial Summary Judgment on Plaintiff's Claim for Trade Dress Infringement

Defendant's Motion for Partial Summary Judgment relies on the Court's previous statements in orders denying cross-motions for summary judgment and Plaintiff's subsequent motion for reconsideration. Defendant previously sought summary judgment on all of the claims alleged in Plaintiff's Complaint, including Plaintiff's claim for trade dress infringement.[17]

---

15. Given that fraud requires a showing of both knowledge and the intent to deceive. Defendant must adduce circumstantial evidence from which the Court could infer that Plaintiff (1) knew about Mỹ Tho city, (2) knew that its failure to disclose the city's existence was false, and (3) deliberately chose not to disclose the city with the specific intent to deceive.

16. Because Defendant cannot prevail on a defense or counterclaim of fraud absent evidence of Plaintiff's knowledge or intent, the Court does not address Plaintiff's alternative argument regarding whether the USPTO in fact relied on the alleged omissions.

17. Pursuant to the Court's order striking Defendant's initial summary judgment motion for its failure to comply with the Court's Standing Order and the length and format requirements set forth therein, (*see* Dkt. No. 122), Defendant filed an amended motion for summary judgment, (*see* Dkt. No. 144). The amended motion is the document the Court considered in ruling on Defendant's earlier motion for summary judgment.

(*See* Dkt. No. 144 at 2.) In denying Defendant's request for summary judgment, the Court considered Defendant's arguments regarding the purported invalidity of Plaintiff's "MY–THO" trademark. (*See* Dkt. No. 155 at 13–15.) The Court did not expressly consider Plaintiff's trade dress claim because Defendant's motion did not raise any legal arguments regarding the issue. Indeed, Defendant's memorandum of points and authorities in support of its motion for summary judgment merely repeated an inadmissible statement from Mr. Pham Van Tu's largely inadmissible declaration, to the effect that "Thuan Phong's packaging is not similar to Anhing's packaging in either form or shap (*sic*). In fact it is entire·difference (*sic*)" (Dkt. No. 144 at 2.)

 In denying Plaintiff's motion for summary judgment, the Court did address the parties' respective trade dress. (*See id.* at 18.) In doing so, the Court stated that Defendant's packaging "is distinctive enough as to prevent consumer confusion." (*Id.*) This statement, however, was based upon the Court's earlier order denying Plaintiff's request for a preliminary injunction. (*Id.* (citing Dkt. No. 46 at 10).) It was not a specific factual finding, made at the summary judgment stage, that no triable issue exists as to whether Defendant's trade dress is likely to cause consumer confusion as to source.

Defendant now seizes upon the Court's language in denying Plaintiff's motion for reconsideration. Defendant argues that in denying reconsideration, the Court made a factual finding that no triable issue exists with respect to whether there is a likelihood of confusion between the parties' respective trade dress. Defendant relies on the Court's statement that "the product packaging of the two products is distinct enough to prevent confusion between the parties' trade dress." (Dkt. No. 186 at 7 (emphasis ·omitted).) As Defendant sees it, this statement is equivalent to a factual finding precluding Plaintiff's trade dress infringement claim.

Defendant's argument, however inventive, is ultimately unpersuasive. The Court's order denying reconsideration addressed only Plaintiff's *trademark* infringement claim. Although its reasoning referenced the parties' trade dress, it did so only because Plaintiff believed the Court erred in simultaneously evaluating whether Plaintiff was entitled to summary judgment on its trademark and trade dress claims. The Court did not reconsider the merits of the trade dress claim, or its previous conclusion that Plaintiff had failed to carry its burden of demonstrating a lack of triable issues on this claim. Defendant would have the Court conclude that because *Plaintiff* failed to carry its burden of demonstrating entitlement to judgment as a matter of law on the trade dress claim, *Defendant* is therefore entitled to judgment as a matter of law. But the parties' burdens at the summary judgment stage are independent. That Plaintiff failed to demonstrate, as a matter of law, a likelihood of consumer confusion with respect to the parties' trade dress is not equivalent to a finding that Defendant satisfied its burden of demonstrating, as a matter of law, no likelihood of consumer confusion. In short, the Court is not persuaded that a statement amounting to dictum in the context of a motion for reconsideration warrants judgment as a matter of law in Defendant's favor on Plaintiff's trade dress infringement claim.

The parties quibble over whether Defendant has improperly styled its pending motion as a request for reconsideration of the previous order denying the cross-motions for summary judgment. To that end, Plaintiff argues that Defendant has failed to demonstrate grounds for reconsideration,

whereas Defendant maintains that successive motions for summary judgment are appropriate. These procedural arguments create confusion where none need exist. Regardless of whether Defendant seeks reconsideration or summary adjudication on the trade dress claim. Defendant's request is unfounded. The Court has not found, as a matter of law, that no triable issue exists with respect to the parties' trade dress. The Court has in fact found the opposite. Defendant's request for partial summary judgment on the trade dress claim is therefore **DENIED**.

### C. Plaintiff's Motion for Sanctions

Plaintiff requests sanctions of $10,755 for what it deems as Defendant's willful violation of the Court's order mandating the second settlement conference.[18] (*See* Dkt. No. 290 at 2–3.) According to Plaintiff, Defendant violated this order by failing to produce a person with full settlement authority at the February 27, 2015 conference before Judge Gandhi. Plaintiff seeks an award of sanctions pursuant to 28 U.S.C. § 1927, the Court's inherent power, and Local Rule 83–7.

Defendant has opposed the sanctions motions on various grounds, some procedural and some substantive. First, Defendant objects that the motion is procedurally improper because the deadline for filing motions in this case has expired and Plaintiff did not seek leave before filing the request, and because Plaintiff's counsel failed to meaningfully and timely meet and confer with Defendant's counsel as required by Local Rule 7–3. (*See* Dkt. No. 279 at 8–9.) Pursuant to the Amended Civil Trial Order governing this case, the last day for hearing motions was January 1,

2015. (*See* Dkt. No. 199.) Although the Court granted the parties leave to file the pending partial summary judgment motions, (*see* Dkt. Nos. 270, 272), Plaintiff did not request, and the Court did not grant, leave to file motions for any other purpose. Additionally, it is clear that Plaintiff has not complied with Local Rule 7–3. The rule requires a party "contemplating the filing of any motion" to discuss the matter with opposing counsel at least seven days before doing so. *See* CD. Cal. L.R. 7–3. Yet Plaintiff admits that it did not confer with Defendant's counsel until the very day it filed the Motion for Sanctions. (*See* Pl.'s Mot. for Sanctions at 2.)

■ Even assuming Plaintiff's motion complied with the Court's rules, sanctions would not be appropriate. Put simply. Plaintiff has not demonstrated bad faith or conduct tantamount to bad faith as required to award attorneys' fees pursuant to § 1927, the Court's inherent authority, or Local Rule 83–7. Plaintiff appears to assume that Defendant failed to produce a person with full settlement authority because, at the end of the settlement conference, the two principals present on Defendant's behalf indicated the desire or need for more time to consider the final settlement offer. By Plaintiff's logic, the fact that Mr. Tran and Mr. Van Nuoc requested additional time to confer necessitates the conclusion that these individuals lacked authority to enter a final, binding settlement on Defendant's behalf.

Although Plaintiff maintained at the hearing on this matter that it is not requesting the Court to infer Mr. Tran and Mr. Van Nuoc lacked settlement authority. Plaintiff has not provided the Court with clear evidence that these individuals were

---

18. Plaintiff originally requested sanctions of $5,000. (*See* Pl.'s Mot. for Sanctions.) In its Reply, Plaintiff states that the $5,000 figure "was based on a miscalculation of fees" and

that, based on its counsel's hourly rates, the actual fees incurred amount to $10,755. (*See* Dkt. No. 290 at 3.)

942

not authorized to settle the case on Defendant's behalf. The declaration from Plaintiff's counsel states only that "it became apparent that defendant Thuan Phong Company Limited's representatives did not have settlement authority" and that "Thuan Phong's alleged 'decision-maker' had to call for approval on the then current settlement proposal and said no response would occur until Monday, March 2." (Gray Sanctions Decl. ¶¶ 3, 4.) These statements do not show that Mr. Tran and Mr. Van Nuoc in fact lacked settlement authority. They are consistent with Defendant's representation that Mr. Tran and Mr. Van Nuoc required additional time to *consider* the offer—not necessarily additional time to request Mr. Pham Van Tu's final approval. As a result, Plaintiff's motion appears to be based upon surmise and conjecture and fails to establish bad faith or its equivalent.

Both parties concede that the settlement negotiations proceeded for an entire day and lasted for over nine hours. Mr. Tran and Mr. Van Nuoc's request for additional time was warranted under the circumstances, as they may have concluded that a break from discussions would be more productive and more likely to result in an agreement than further negotiations. The remaining facts and circumstances indicate only that Mr. Tran and Mr. Van Nuoc had final settlement authority. As Plaintiff points out, Mr. Pham Van Tu previously confirmed that Mr. Van Nuoc had full settlement authority. (*See* Dkt. No. 290 at 6–7.) And the power of attorney authorizes Mr. Tran to serve as "an authorized representative" on Defendant's behalf, as well as to sign "applications related to the settlement of this case." (*See* Price Sanctions Decl. Ex. A.) Accordingly, the Court cannot conclude that Defendant violated its order by failing to produce a person with full settlement authority. Plaintiff's Motion for Sanctions is therefore **DENIED**.

## VI. CONCLUSION

For the foregoing reasons, the Court finds that no triable issue remains with respect to the defense and counterclaim of fraud. Plaintiff's Motion for Partial Summary Judgment is therefore **GRANTED**. The Court also finds that Defendant has failed to carry its burden of demonstrating the absence of a triable issue with respect to Plaintiff's claim for trade dress infringement. Defendant's Motion for Partial Summary Judgment is therefore **DENIED**. Plaintiff's Motion for Sanctions is also **DENIED**.

**IT IS SO ORDERED.**